MARTHA E. B. MOYE, plaintiff in error, vs. ELAM B. WATERS, defendant in error.

1. Although a husband purchases property with money belonging to his wife, the presumption is that the property belongs to the husband, until the contrary is shown.

2. Where the husband transfers to his creditor a promissory note before its maturity, which belongs to and is payable to his wife, or bearer, and the wife sues the creditor in trover for the note—it was not error for the court to refuse to charge the jury, a written request of plaintiff—that the transfer did not divest the title of the note. The request should have contained the qualification that the jury should believe from the evidence that defendant had notice that the note was the property of the wife.

3. Where there is no error in what the court did charge, or in the refusal to charge the special requests made, and there is no motion for a new trial, this court will not grant a new trial on the ground that the court below failed to charge on certain points which the losing party claims were favorable to him, although under the evidence such further charge would have been proper.

Husband and wife. Presumption. Promissory notes. New trial. Practice in the Supreme Court. Before Judge JAMES JOHNSON. Taylor Superior Court. October Term, 1873.

Martha E. B. Moye brought trover against Elam B. Waters for a note dated March 1st, 1872, due on the 1st of the succeeding June, for $500 00, made by Colbert & Montfort, payable to the plaintiff. In a second count the note is de-

scribed as payable to the defendant. The general issue was pleaded. The evidence made, in brief, this case :

Plaintiff's husband, with money belonging to her separate estate, purchased a stock of goods in the town of Butler. He subsequently sold out to Colbert & Montfort for $2,000 00, receiving $500 00 in cash, and three notes each for $500 00. These notes were made payable to the plaintiff, or bearer. At the time of this sale her said husband was indebted to the defendant $965 00, $375 00 of which amount was for goods sold on commission. He delivered to the plaintiff the $500 00 in cash, and the aforesaid three notes received for said stock. The defendant demanded from him the payment of the aforesaid indebtedness, and threatened him with a prosecution for larceny after trust should he fail to comply. Thoroughly alarmed under this threat, he gave to the defendant an order on Colbert & Montfort for $465 00, and, without the knowledge or consent of the plaintiff, abstracted from the drawer of her bureau one of the aforesaid notes, which he offered to the defendant. The latter refused to receive it on account of its being made payable to the plaintiff, but stated that if the makers would sign a new note, payable to him, it would be satisfactory. This course was pursued and the indebtedness settled. The order and note were both paid. Plaintiff's husband used her money, originally, in the purchase of said stock of goods against her protest, and he sold out under her earnest solicitation.

The defendant swore positively that he did not know that the note delivered to him was the property of the plaintiff.

The court charged the jury, amongst other things, as follows :

"A married woman, who has money in her own right, in her possession, and the husband takes the possession of it and uses it, the presumption of the law is that he used it by her consent, and if the husband purchases property with such money, the law presumes that the property thus purchased is the property of the husband until the contrary is shown by proof."

"If the wife permit her husband to use her money, though

Moye *vs.* Waters.

it be her separate estate, without contract, express or implied, to be responsible to her for it, the husband does not, by such use, thereby become a debtor to his wife for the money so used." To which charges the plaintiff excepted.

The plaintiff requested the court to charge as follows: "If the plaintiff did not consent for her husband to take her money, but opposed his taking it, and he did take it and purchased the goods with it, then the goods purchased with the money were the property of the plaintiff. If Moye was indebted to the plaintiff, by reason of having taken her money without her consent, and being so indebted, did, in good faith, deliver to her, in payment of such indebtness, the note in controversy, then the right and title to such note vested in the plaintiff, and if Moye, without her consent, took said note and delivered it to the defendant, such delivery did not divest her title to it."

The court refused thus to charge, and plaintiff excepted.

The jury found for the defendant. Error is assigned upon each of the aforesaid exceptions.

E. H. WORRILL; B. B. HINTON, for plaintiff in error.

J. M. MATTHEWS; W. S. WALLACE, for defendant.

TRIPPE, Judge.

1. The mere fact that property is purchased by one and paid for with the money of another, does not vest the title to such property as against third persons in the one whose money paid for it. Nor does any legal or equitable right spring out of such a fact in favor of such person, against innocent purchasers, who, in good faith, take the title from one who is apparently the true owner and in truth is so, except as to some secret equity of the party whose money has been used. There must be notice of such an equity before it can avoid a title otherwise good. In Shewmate *vs.* Ballard, 1 Metcalf's Reports, (Kentucky,) a husband sold a slave belonging to his wife, and received therefor a bill of sale to himself for another slave. It was held that the legal title to the latter vested in

the husband, and a purchaser from him, without notice of the wife's equity, was protected against it. And the court in pronouncing, say: "We are aware of no principle or authority upon which a latent equity, thus derived, can be allowed to prevail, even in favor of a married woman, against a party who has fairly acquired the legal title and whose purchase has invested him with an equity at least equal to that relied upon." See, also, 16 Alabama, 486; 5 B. Monroe, 233; *Bryan & Hunter vs. King*, decided at this term.

2. Hence, if a husband uses the money of his wife, with or without her consent, and acquires thereby the title in himself to other property, third persons who *bona fide* take title for value from him to such property, will be protected. The charge of the court, which is excepted to, was, therefore, not such as the plaintiff could complain of. It really did not affect the controlling point in the case. That point is whether, when the defendant took the note from Mr. Moye, he had notice of the title or equity of Mrs. Moye to it, so as to charge him with *mala fides*, and thereby vitiate his title. Granting that the note was, in fact, the property of Mrs. Moye; that her husband did, with her money, with or without her consent, purchase the stock of goods; that he was her debtor to the amount of her money he had used, and that he discharged the debt to her by delivery of this note, with others; and grant, further, that he took the note without her knowledge, and paid it to the defendant for what he owed him, how does that affect the case as it is made in the record? There is not a word of testimony that anybody knew, until this suit was brought, that the husband had bought the goods with her money, and hence nothing arises in her favor against the defendant on that ground. But suppose the note was legally the property of the wife. It was payable to her or bearer; it was not due; it was delivered to the defendant for a valuable consideration; and the question is not, was the note ever the property of the wife, but did such a note, thus transferred, become the property of defendant? It thus rested on the good faith of the defendant, or rather, as expressed by the

Moye *vs.* Waters.

court in *Matthews vs. Poythress,* 4 *Georgia,* 287, it depended on whether his title was defeated by his *mala fides* in the purchase, and that was to be determined by his notice or want of notice that the note was not the property of the husband. That question was not presented in the requested charge made by plaintiff, and which was refused by the court and excepted to. The request was made as a whole. The first branch of it, to-wit: that, under the recited facts, the goods became the property of the plaintiff, might be true as between her and her husband, and yet not affect the case. The latter branch could not have been properly given without the qualification, that the jury should believe from the evidence that defendant had notice that the note was the property of the wife. The *bona fide* purchaser of a negotiable note, before it is due, from one who has no title, acquires a title: 4 *Georgia,* 287; 8 *Georgia,* 421. The test in such cases is *bona fides*—notice. We are not considering the question, whether the jury found right or not, under the evidence—whether there was anything in the facts of the case to charge defendant with actual or constructive notice—whether the mere fact that the note was payable to the wife or bearer, was sufficient. The husband, when that note was refused, afterwards brought another, payable to defendant, which was accepted. How a jury should have considered such testimony, we do not say. That matter is not before us.

3. There was no motion for a new trial. No request was made for a charge on this point. As it was the controlling one, the charges the court did give contained nothing which damaged the plaintiff. She was not entitled to the rejected charge, in the form requested, and we cannot set aside a verdict and grant a new trial merely because a party complains of an omission to charge on certain points which he thinks were favorable to him. A request founded on those should have been made of the court, and its attention called to them.

Judgment affirmed.