WEBB *et al. v.* HICKS.

1. Under the Civil Code, § 3172, the judge of the superior court has no authority on petition in vacation to order a sale of the legal estate of minors, nor do the minors become wards in chancery when such a petition is presented.
2. Civil Code, § 4864, providing that a court of equity is always open, is not intended to abolish the distinction between term time and vacation ; but where a court of equity has jurisdiction of the person and subject-matter, it is always open for the passage of administrative orders, interlocutory decrees, and orders for the sale of the estates of minors within equity jurisdiction.
3. Where the debts have been paid and the will fully executed, the executors can not, under the Civil Code, § 4855, on an allegation that it is impossible to carry out the will, obtain an order to sell the vested interest of minors in land passing under the will.
4. No evidence having been introduced to support the affirmative defense, and the order of sale under which the defendant claimed title being void, it was error to direct a verdict in favor of the defendant.
5. A direct bill of exceptions will lie to a ruling of a trial court directing a verdict.

Argued February 12,—Decided March 13, 1903.

Complaint for land.  Before Judge Roberts.  Johnson superior court.  March 17, 1902.

The plaintiffs claimed the land as remaindermen under the fourth item of the will of their grandmother Holland Wright.  The material part of this item is :  " I desire that all my negroes, and as also all other property, be appraised and equally divided between my sons, William, John, and Eli, and at their death to go to their children."  The testatrix died in 1861, and the property was divided in accordance with the will.  The land involved in this suit was in the part allotted to John Webb, one of the sons mentioned above.  He died March 18, 1897.  The suit was by his children, and was begun February 28, 1899.  The defendant claimed under a deed made in pursuance of an order passed by the judge of the superior court, at chambers, June 4, 1868, on a petition presented by John and Eli Webb as executors of the will.  That petition was addressed " To the Honorable William Gibson, judge of the superior courts of the Middle District of Georgia, having jurisdiction in equity."  It alleged that the property devised had been divided as required by the will, the debts paid, and the will fully executed ; that John and Eli Webb had sold, for a valuable consideration, their respective interests as life-tenants in the land passing under the fourth item of the will, each intending to reside in

southern Georgia, and they desired the interposition of the court in order that a sale of the remainder might be effected as a present benefit to the remaindermen; that John and Eli Webb each had a large family of children, and, owing to the results of the war, they were in very straitened circumstances; that the tract given to John Webb had the old homestead on it, with much worn and worthless land, the fee of which could be sold for $2,600; that the interest of the life-tenant was antagonistic to that of the remaindermen, and the probabilities were that the remaindermen's enjoyment of the estate would be postponed for many years; that John Webb, having lost a leg, was unable to make such a support as he otherwise might for his children, who were minors; and that by a sale of the remainder interests and a reinvestment of the proceeds thereof in lands in southern Georgia, where a good range of stock was to be found, the estate of the children would be enhanced and all parties benefited.    It was prayed that the petitioners be appointed trustees for their minor children with authority to sell the remainder and invest the proceeds in lands " for their benefit as joint tenants;" that the will be so reformed as to create a trust estate for the benefit of the remaindermen, reserving a use for life in John and Eli Webb, and that the purchase-money be invested for the benefit of all, under the uses and trust above mentioned.    Indorsed on the petition was the consent of each of the petitioners to accept the trusteeship of his children.    On June 4, 1868, at chambers, the judge signed an order appointing John and Eli Webb guardians ad litem, and another appointing them trustees, for their respective children named in the petition, and providing that " said trustees be and they are hereby fully authorized and empowered to sell the land described in the application and the petition, and to make and execute good and sufficient titles thereto in fee simple, and to invest the proceeds in other lands, subject to the uses and trusts mentioned in said will, and that the rents and profits accruing therefrom be for the benefit of John Webb and Eli D. Webb and their children respectively, under the provisions and by the terms of said will."    It was further ordered that they make a return to the next term of the superior court as to their acts in the premises.    On June 8, 1868, a conveyance of the land involved in the present case was made by John Webb to John D. Wright, which recited that it was executed in

pursuance of a decree of the superior court, appointing John Webb trustee for his minor children, and authorizing said trustee to sell the lands devised to them by the will of Holland Wright. The defendant came into the possession of this land as one of the heirs of John D. Wright, in a division of his estate.

On the trial this petition with its indorsements, and the orders thereon, were admitted in evidence, over objection on the grounds that the will gave the children of John Webb a vested remainder in the premises in dispute, and their remainder interests could not be disposed of in the manner sought by the petition; that the judge of the superior court, sitting as a court of equity, could not entertain jurisdiction of such a petition and pass such orders thereon, because the court of ordinary at that time had exclusive jurisdiction of such estates for the purposes sought in the petition; that the order was void, because it attempted to create a trust estate in the property, which was opposed to the intent and language of the will; that even if a court of equity had jurisdiction in the premises, the judge had no authority, in vacation, at chambers, to entertain the petition or pass the orders; and that some of the remaindermen were born after the passage of said orders, and their rights could not be defeated in the manner attempted. The court directed a verdict in favor of the defendants. The plaintiffs assigned as error the action of the court in directing a verdict, and in admitting in evidence the petition and orders mentioned. There was a motion to dismiss the writ of error, on the ground that a direct bill of exceptions without a motion for a new trial was not a proper method for the correction of the errors complained of.

*Daley & Bussey,* for plaintiffs, cited Cobb's Dig. § 467; Code of 1882, § 2265; 48 *Ga.* 454; 49 *Ga.* 411; 60 *Ga.* 398, 403, 677; 75 *Ga.* 95, 436; 80 *Ga.* 36; 86 *Ga.* 181-5; 91 *Ga.* 304; 97 *Ga.* 614; 99 *Ga.* 444, 450; 106 *Ga.* 614, 617; 111 *Ga.* 275 (3), 886; 113 *Ga.* 891; 1 Dan. Ch. Pr. 205; 81 *Ga.* 360 (3,4); 82 *Ga.* 354; 17 A. & E. Enc. L. (2d ed.) 955, 956 (III); 2 How. 43, 319; 19 Md. 375; 71 *Ga.* 196 (4); 95 *Ga.* 267.

*James K. Hines* and *James B. Hicks,* for defendant, cited Civil Code, §§ 4855, 4863, 4864 et seq.; Cobb's Dig. 325, 326; Acts 1865-6, p. 221; 65 *Ga.* 728; 70 *Ga.* 806; 71 *Ga.* 654, 664; 84 *Ga.* 392; 90 *Ga.* 326; 95 *Ga.* 766; 93 *Ga.* 361; 94 *Ga.* 386; 53 *Ga.* 36; 59 *Ga.* 722-8; 65 *Ga.* 724 (5); 70 *Ga.* 64, 808; 71 *Ga.*

22

654, 665; 82 *Ga.* 523; 106 *Ga.* 614 (2); 2 Story, Eq. § 1352; 146 Ill. 227; 64 Ala. 311; 82 Ala. 489; 108 Ala. 651; 3 Johns. Ch. 348; 5 Johns. Ch. 163; 2 N. J. Eq. 20, 22; 3 Rich. Eq. 321; 86 N. C. 198; 73 N. C. 504; 33 Ark. 425.

LAMAR, J. 1. There was no trustee, no trust, and no equitable estate, but a vested remainder, and a court of ordinary could have ordered a sale thereof on application by a duly appointed guardian (*Wallace* v. *Jones,* 93 *Ga.* 420 (5); *Crawford* v. *Broomhead,* 97 *Ga.* 614) but a judge of the superior court in vacation could not order such sale. It is true that the act of February 20, 1854, did authorize the judges of the superior courts in vacation to pass orders in relation to the sale of trust " or other property," or the investment of trust " or other funds;" yet the words " other property " and " other funds " were omitted when the act was codified. It is probably to this omission that Judge Bleckley refers in *Knapp* v. *Harris,* 60° *Ga.* 403, where he says that " it is best to abide by the construction " in *Milledge* v. *Bryan,* 49 *Ga.* 411, where it was held that " The act of 1854, giving power to a judge in chambers to appoint and remove trustees, and to order the sale of property under certain conditions, applied only to cases of trust estates; such estates as should be in the hands of trustees, and perhaps to such property or assets as might be within equity jurisdiction by reason of some pending litigation in her courts." This ruling has been uniformly followed; and in *Rogers* v. *Pace,* 75 *Ga.* 436, it was expressly held that the chancellor had no power in vacation to decree a sale of a vested legal remainder. The defendant in error, therefore, asked permission to review that decision. Our investigation confirms us in the opinion that the ruling there made was sound. It has been cited or followed many times. *Pughsley* v. *Pughsley,* 75 *Ga.* 95; *Taylor* v. *Kemp,* 86 *Ga.* 181; *Fleming* v. *Hughes,* 99 *Ga.* 444; *Richards* v. *East Tenn. Ry. Co.,* 106 *Ga.* 632; *Mills* v. *Geer,* 111 *Ga.* 275. Nothing in *Richards* v. *Railway Co.,* supra, questions its correctness, in so far as it construed the act of 1854; for the court emphasizes the fact that the order in the *Richards* case was passed in term time, and not in vacation. The act of 1854, as codified, creates a sort of statutory court, somewhat analogous to the limited and personal jurisdiction of the judge in trying contested elections (*Johnson* v. *Jackson,* 99 *Ga.* 392), or in ordering the sale, for reinvestment, of a minor's

legal estate (Civil Code, § 2545), or in habeas corpus courts. Under the Civil Code, § 3172, the judge in vacation has no more power than is therein provided; his jurisdiction is expressly limited to trust property, with no authority to order the sale of a legal estate; and if the judge had no authority to order the sale of this real estate, the minors did not become his wards when the petition was presented.. It would be as fair to say that a minor was a ward in chancery because he had a suit pending at common law, as to make him a ward because of an application addressed to the judge with only limited jurisdiction. It is not necessary to undertake to define when minors do become wards in chancery, except to progress far enough in a circle to say that they must at least be parties to a chancery proceeding. It may have been instituted by them in reference to their property, or the suit may have been begun by others as to some right or claim in the property belonging to the minors. If such a proceeding is in a court of equity having jurisdiction of the person and subject-matter, the chancellor, in term or vacation, may pass proper orders in reference to such property. This particular and limited class of orders may be granted in some cases without the petition being filed or docketed, and without formal process or formal service thereof (Civil Code, § 4863); but in the very nature of things it must appear that some one legally representing the minor, as trustee or guardian ad litem duly appointed and qualified to act, was before the court. Before the act of 1876 (Civil Code, § 4987) it was held that the minors were not necessary parties, if duly represented by the executor or trustee. Whether the petition here is to be treated as presented to the judge in vacation or to a court of equity, it was apparent on the face of the proceedings that the executors did not represent these minors; that the title had passed out of the estate; and that John and Eli Webb, instead of occupying a fiduciary relation, were merely life-tenants who had sold their interest in the property, and no more controlled the legal estate than if they had been utter strangers to the remaindermen.

2. The defendant in error, however, insists that, if invalid under the Civil Code, § 3172, and no matter how erroneous the judgment may have been, it was not the order of a judge in vacation, but the decree of a court, rendered, not in vacation, but in term time, because a court of equity is always open. § 4864. But if a court

of equity is always open and may sometimes be authorized to grant relief ex parte, on petition, and without service or process, it does not follow that all manner of relief can be granted the moment the petition is presented, or that all distinction between term time and vacation has been abolished. Civil Code, § 4848. The fact that a court of equity is always open is put in opposition to the idea that, except where changed by statute, a court of law can only act during term. Supersedeas, writs of mandamus, quo warranto, subpœnas for witnesses, attachments, garnishments, and the like issue and are regulated by statute. Formerly, by consent or orders taken in term, now under the Civil Code, § 4323, there could be a hearing in vacation; though in ordinary course of practice at law the interposition of the judge is rarely needed except in term time. But in an equity case where the estates of minors are involved; or where a receiver is appointed to manage property during minority or until conflicting rights are decided; or where it may be necessary to rent or sell land or to raise money for the protection of the estate in litigation, before final decree, it would be disastrous to be obliged to sit with folded hands and allow the property to be wasted, lost, or mismanaged, because there was no power to act in the interval between regular terms of court. To meet such a constantly recurring state of affairs, the Civil Code, § 4864, provides that a court of equity is always open; and, as to property within its jurisdiction, it may in vacation grant administrative orders, interlocutory decrees, and in some cases may even enter final decree where there are no issues of fact, and the parties consent. Civil Code, §§ 4855, 4323. These interlocutory orders do not necessarily have to be passed after process is issued or service has been made. For as soon as a court of equity has before it a petition as to persons or a subject-matter of which it has jurisdiction, it can, without notice, grant a temporary restraining order (Civil Code, § 4924), or appoint temporary receivers (Civil Code, § 4904). In ordinary cases process must be attached and service made after the temporary orders have been signed. But without process, on proper notice, or without notice if sufficient excuse is shown (Civil Code, § 4865), it may, in the exercise of its protective powers over trust estates or the estates of wards in chancery, remove trustees, or order the sale of trust property or of the estates of minors within equity jurisdiction by reason of pending litigation. Civil

Code, §§ 4863, 4865. We do not think that the petition was addressed to a court of equity, or that the allegations and proceedings thereunder were such as to show that equity had jurisdiction of the minors or of their property, so as to be able in vacation to grant the relief prayed for. Even in term time a court of equity, with all parties before it, would require a most extraordinary state of facts, and would insist upon the fullest hearing being granted the minors, before it would divest them of a legal estate, and put the title in a trustee. It is impossible to imagine a case where the court would give to other persons an undivided interest in such property without compensation to the minors, or without consideration or benefit to them. The misfortunes of the parents could not be in part made good out of the children's estate.

3. The defendant's further contention was that the order to sell was valid under the Civil Code, § 4855, authorizing the judges of the superior courts, at chambers, during vacation, to render any decree that may be necessary to carry out any last will and testament. But this was not such a case of impossibility of carrying out a will as was contemplated by that section. It is a codification of the act of 1866, passed just after the war, and intended to enable the chancellor to grant orders necessary to enable executors to carry out a testamentary scheme. Many wills were then before the courts, the schemes of which required the executors to continue farming operations, and to that end work the land with slaves, or to do other acts rendered impossible by the war. In such cases then, or in similar cases now, the court could authorize the executor to do as nearly as possible what the testator had directed. As to charitable devises, where a general intention had been manifested by the testator to effect a certain purpose, and the mode by which he directed it to be done failed from any cause, a court of chancery, by approximation, could effectuate the purpose in a manner most similar to that indicated by the testator. Civil Code, §§ 3338, 4007. The act of 1866 was a sort of extension of the doctrine of cy pres to legacies generally, where it became impossible to carry out the will. It was not an unlimited power, for the court was only allowed to pass decrees that might be "necessary and legal," and it had further to appear that such order was needed to carry out the will. Here the petition recited that the debts had been paid, that the will had been fully executed, and that the executors

who .were life-tenants had sold their life-estate. The debts having been paid, an assent to the legacies would be implied. Civil Code, §§ 3319, 3321. The title to the property thereby vested in those entitled thereto under the fourth item of the will. John and Eli Webb were no longer executors. There being no provision in the will requiring the property to be kept together for the benefit of the children and grandchildren, as in *Sharp* v. *Findley*, 71 *Ga.* 665, and the will imposing no duty of management of the land or maintenance of the grandchildren, the property no longer belonged to the estate of Holland Wright. There was no duty or necessity of executing the will, and the chancellor had no jurisdiction to order a sale of a vested remainder belonging to these minors.

4. The defendant filed a plea alleging that the money received by John Webb when he sold the land to Wright had been invested by John Webb, as trustee for the children, in land in Lowndes county, which the plaintiffs were still holding. There was no evidence offered to sustain this defense, and the plaintiffs offered positive testimony to disprove it as a fact. This affirmative defense having failed, and the order of sale being void, the plaintiffs were entitled to recover, under the evidence submitted; and it was error to direct a verdict in favor of defendant.

5. A direct bill of exceptions was a proper method of correcting the error, though a motion for a new trial might have been made. Civil Code, § 5331; Acts 1898, p. 98; *Taylor* v. *Reese*, 108 *Ga.* 379; *Wright* v. *Hollywood Cemetery*, 112 *Ga.* 884. The motion to dismiss is denied.          *Judgment reversed.   By five Justices.*