*Brown & Roop,* for defendants.

---

## SCARBOROUGH *v.* HOLDER.

1. A bill of exceptions sued out under the Supreme Court practice act of 1898 is not subject to dismissal on the ground that it contains no assignment of error upon any final verdict or judgment in the case, if, after reciting the fact that the court sustained the defendant's motion to direct a verdict in his favor, it sets forth the following exception: "To which ruling by the court plaintiff then and there excepted, and now excepts and assigns the same as error, and says that the ruling of the court in directing said verdict for the defendant is contrary to law, contrary to evidence, and without evidence to support it." Such an assignment of error is, in legal contemplation, an exception to the verdict itself, the writing of which at the instance of the court was,

in effect, the act of the court, as the jury were bound to return that verdict and none other.

2. When it is shown that an obligor in a bond for titles executed a deed to the obligee pursuant to his bond, and turned over the deed to the agent of the obligee upon payment to him by such agent of the purchase-money, a prima facie case of delivery of the deed is made out. But, as tending to rebut an inference of delivery from these circumstances, it is competent to show that, contemporaneously with or previously to the execution of the deed, the obligee had directed the vendor to make the deed to a third person, but by mistake the vendor failed to do so, and in a few days after the execution of the deed, and as soon as it was discovered by the obligee that the deed was made to him and not to the person to whom he had directed it should be made, he returned the deed to the vendor for correction.

3. A secret equity can not be asserted to defeat the title of an innocent purchaser at judicial sale.

Submitted July 18, — Decided December 15, 1906.

Rehearing denied January 18, 1907.

Ejectment.　　Before Judge Lewis.　　Laurens superior · court. July 25, 1905.

*John M. Stubbs* and *Akerman & Akerman,* for plaintiff.

*Hardeman & Jones* and *P. L. Wade,* for defendant.

EVANS, J. 1. A motion was made to dismiss the bill of exceptions, on the ground that it contained no assignment of error upon any final verdict or judgment in the case. This is a direct bill of exceptions in a case in which a verdict was directed by the court, and error is assigned upon various rulings made pendente lite, as well as upon the direction of a verdict. The bill of exceptions recites: "Defendant's counsel then and there moved the court to direct a verdict for the defendant for the premises in dispute, which motion was granted and a verdict directed by the court for the premises in dispute. To which ruling by the court plaintiff then and there excepted, and now excepts and assigns the same as error, and says that the ruling of the court in directing said verdict for the defendant is contrary to law, contrary to evidence and without evidence to support it." In *Montgomery* v. *Reynolds,* 124 *Ga.* 1053, upon the authority of the cases cited in the first headnote, it was ruled that a direct bill of exceptions to a ruling made pendente lite, which does not assign error upon any final judgment, will not be entertained by this court. In none of the cases cited nor in the main case was the question made or decided that under the act of December 20, 1898 a direct bill of exceptions to a pendente lite

ruling would lie without assigning error upon a verdict. That act provides: In "any case now or hereafter brought, where the judgment, decree, or verdict has necessarily been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision, or charge of the court, it shall not be necessary to make a motion for new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling, decision, or charge complained of." Acts of 1898, p. 92. Where a verdict has been necessarily controlled by a ruling of the court, the losing party is given the right to except to such verdict and assign error on the ruling of the court without making a motion for a new trial and without filing complete brief of the evidence; all that the complaining party is required to include in his bill of exceptions is so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling complained of. One of the rulings complained of in the present case is the direction of a verdict; this, of course, is a controlling ruling. The plaintiff in error, under the act of 1898, was given the privilege of bringing this controlling ruling to the Supreme Court for review by a direct bill of exceptions, complaining that the verdict was necessarily controlled thereby. The difficulty in the case is whether there has been any exception taken to the verdict in the assignment of error. When the court directed the jury to return a particular verdict, the jury was bound to return that verdict and none other. The writing of the verdict at the instance of the court was, in effect, the act of the court; and when the bill of exceptions assigns error upon the ruling of the court in directing a particular verdict, as being contrary to law, contrary to evidence, and without evidence to support it, in legal contemplation this is an exception to the verdict itself. Therefore, construing the assignment of error upon the direction of the verdict as being an assignment of error upon the verdict, we hold that there is an exception taken to the verdict which brings this case under the provisions of the act of 1898, and we will inquire whether the controlling ruling complained of was correct or not.

2. John H. Scarborough brought his suit in ejectment against E. J. Holder. Both parties claimed title under one Higgins, and it was the contention of the plaintiff that Higgins had sold the land to J. M. Scarborough, executing to him a bond for titles; that J. M. Scarborough, being unable to pay the purchase-price, agreed that the plaintiff might build a store on the lot and pay the vendor the purchase-money and have a deed made directly to him; that the purchase-money was paid by the plaintiff, but by mistake the deed was made to J. M. Scarborough; that within a few days, and as soon as J. M. Scarborough ascertained the fact that the deed had been executed to him, he refused to accept it and returned it to Higgins, the vendor; and that he then corrected the mistake by making a deed to the plaintiff. The defendant, on the other hand, contended that the land was sold by Higgins to J. M. Scarborough, to whom Higgins made a deed in accordance with his bond for titles; that about ten days thereafter J. M. Scarborough caused the deed to be destroyed and another, covering the same premises, to be made to his brother, John H. Scarborough; that there was no change in the possession of the premises, but J. M. Scarborough remained in possession until he was declared a bankrupt, when his trustee in bankruptcy took possession of the land and sold it to the defendant, under an order of the bankrupt court, and that he (the defendant) had no notice of any secret equity existing between the bankrupt and his brother, the plaintiff.

When this case was before this court at the October term, 1903, it was ruled that where a vendor had made a deed to land in pursuance of his bond for titles, and had delivered the same to his grantee, the subsequent destruction of the deed by the consent of the grantee and grantor did not have the effect of revesting the legal title in the vendor, so as to enable him to convey the premises to a third person. See 119 *Ga.* 256. If there was a delivery of the deed from Higgins to J. M. Scarborough, the legal title would pass to his trustee in bankruptcy upon his being adjudged a bankrupt, and the purchaser at the trustee's sale, which was had under an order of court, would acquire this legal title. And if the purchaser had no notice that the land had been paid for with another's money, the title he acquired at the trustee's sale would prevail over any secret equity which a third person might subsequently assert against the bankrupt. The mere fact that property is purchased

by one and paid for with the money of another will not, as against third persons without notice, vest the title to the property in the one whose money paid for it; there must be notice of the equity before it can avoid a title otherwise good. *Moye* v. *Walters, 51 Ga.* 13. A similar rule obtains where a purchaser at judicial sale buys without notice of a secret equity, the doctrine of caveat emptor not applying to such a case. *Johnson* v. *Equitable Securities Co.,* 114 *Ga.* 604; *Equitable Loan Co.* v. *Lewman, 124 Ga.* 196.

On the last trial the court refused to allow J. M. Scarborough to testify that "at the time the deed was made from W. F. Higgins to J. M. Scarborough, [he] instructed that it be made to J. H. Scarborough, but by mistake it was made to J. M. Scarborough; but in a very few days, as soon as he noticed the mistake, he returned the deed with the request that it be made to J. H. Scarborough, and that it was so made; and that for more than three months J. M. Scarborough remained in possession of the premises as the tenant of J. H. Scarborough and paid him rent. When he went into bankruptcy, L. E. Minchew, trustee in bankruptcy, took possession of the premises." This testimony was relevant and should have been allowed to go to the jury. It appears that the witness had previously testified that he had entrusted one Wade with a part of the purchase-money paid to Higgins, but had forgotten to tell Wade to have the deed made to John H. Scarborough; and as soon as he saw one Harvard, he procured him to write the vendor that the deed should have been made to John H. Scarborough, and that he (the witness) had never accepted the deed made to him. The vendor, Higgins, testified that he sold the land to J. M. Scarborough and executed to him a bond for titles; that Wade paid the balance of the purchase-money and directed a deed to be made to J. M. Scarborough; that witness executed the deed in accordance with his bond and the instructions from Wade, and delivered the deed to Wade, but that Harvard returned the deed through the mails, accompanied by a letter directing him to change the deed from J. M. to John H. Scarborough, and the writer would explain the reasons for this request the first time he saw the witness. Wade testified that J. M. Scarborough gave him a part of the purchase-money, and he supplied the balance, and, at the request of J. M. Scarborough, paid the money to Higgins; that J. M. Scarborough told witness to have the deed made, but that

he (the witness) did not remember whether it was to be made to John H. or to J. M. Scarborough; and that witness gave the deed which was executed by the vendor to J. M. Scarborough.

Possibly the court was of the opinion that as J. M. Scarborough had just testified that he had forgotten to give instructions to his agent, Wade, to have the deed made to J. H. Scarborough, the witness should not be permitted to contradict himself by testifying that he had given instructions that the deed be made to J. H. Scarborough. That a witness may have testified while on the stand to a given state of facts contrary to what he afterwards proposes to swear affords no reason for excluding his proffered testimony. *Walker* v. *Walker,* 14 *Ga.* 242 (7) ; *Pulliam* v. *Cantrell,* 77 *Ga.* 563. The testimony excluded was most material to the plaintiff's case, its purpose being to establish the non-delivery of the deed to J. M. Scarborough, and thereby defeat the defendant's claim of title. Delivery is essential to the validity of a deed; and in order to constitute complete delivery, there must be acceptance by the grantee or some one authorized to represent him. *Beardsley* v. *Hilson,* 94 *Ga.* 50; *Stallings* v. *Newton,* 110 *Ga.* 875. The crucial point in this case was whether or not there had been a delivery of the deed from Higgins to J. M. Scarborough. If the truth be that J. M. Scarborough, without any previous understanding with his vendor, directed Wade, as his authorized agent, to pay the balance of the purchase-money to Higgins and get a deed from him, but forgot to tell his agent of his secret intention to have the deed made to John H. Scarborough; and if Wade paid the money to Higgins and directed him to make a deed in accordance with his bond for titles, and Higgins executed such a deed and delivered it to Wade, who accepted it in behalf of his principal, this would constitute a complete and final delivery of the deed to J. M. Scarborough; and under these circumstances it would be immaterial whether J. M. Scarborough did or did not accept the deed when it was handed him by his agent, or did or did not know who was therein named as the grantee. The court should have let in all the evidence offered which went to show under what circumstances the deed to J. M. Scarborough was executed and turned over to Wade for transmission to his principal. If J. M. Scarborough had previously arranged with Higgins to have the deed made to John H. Scarborough, but by mistake Higgins executed the deed to J. M. instead of John

H. Scarborough, contrary to instructions given him at the time the deed was executed, then, it would seem, this mistake could be subsequently rectified at the instance of J. M. Scarborough, if he never accepted the deed in person or through his authorized agent, by surrendering it up and having a deed made to the party intended to be named as the grantee.

3. The plaintiff further undertook to show that after J. M. Scarborough had purchased the property and received a bond for titles from Higgins, the former entered into an agreement with John H. Scarborough whereby he was to erect a storehouse on the lot and receive the deed to the property, and that this agreement was carried into effect by the erection of a store which J. M. Scarborough occupied as the tenant of John H. Scarborough, paying rent therefor and remaining in possession until the trustee in bankruptcy took charge of the premises. The court declined to allow testimony along this line, and the complaint is made that the court erred in so doing, inasmuch as the proof offered showed that J. M. Scarborough had estopped himself from asserting title to the premises, and the trustee in bankruptcy, who stood in his shoes, could not acquire or convey any better title to the premises than J. M. Scarborough had. There is no merit in this contention; for the estoppel against J. M. Scarborough could not affect the rights of an innocent purchaser at the trustee's sale. *Equitable Loan Co.* v. *Lewman,* 124 *Ga.* 190.

*Judgment reversed. All the Justices concur.*