33303.   ARNOLD *et al v.* SELMAN.

DECIDED JANUARY 9, 1951.

*Brinson & Davis, Earl B. Self,* for plaintiffs in error.
*Maddox & Maddox,* contra.

SUTTON, C. J.   O. A. Selman sued out a dispossessory-warrant proceeding against I. O. Arnold and Zen Taylor on June 8, 1950, and sought to have the defendants removed from a certain described building in Summerville, Georgia, occupied as a café. The plaintiff alleged in his affidavit that the defendants were in possession of the described premises as tenants at will; that they failed to pay the rent then due; that he had demanded possession of the building and premises, and the same had been refused by the defendants.

Arnold filed a counter-affidavit in which he alleged that his term of rent for the premises had not expired; that he was not holding possession over and beyond his term; that the rent claimed was not due; and he denied that any demand for possession of the premises had been made upon him.

146

Taylor in a counter-affidavit denied that he held the premises in question by lease, or at will, or at sufferance, or otherwise from O. A. Selman or anyone claiming under him and also denied that Selman had made demand upon him for the premises.

The case proceeded to trial before a jury in the City Court of Chattooga County, both sides introduced evidence, and at the conclusion of the evidence each defendant made a motion for a nonsuit which was denied. The trial judge then directed a verdict for the plaintiff against both defendants for possession and for double rent. Exceptions pendente lite were filed to the order overruling the motion to grant a nonsuit. The defendants excepted by a direct bill of exceptions to the refusal to grant a nonsuit, and to the direction of a verdict against them.

■ The defendant in error's motion to dismiss the bill of exceptions, on the ground that no motion for new trial was filed, is without merit. A direct bill of exceptions will lie to the direction of a verdict. *Webb* v. *Hicks,* 117 *Ga.* 335 (5) (43 S. E. 738); *Scarborough* v. *Holder,* 127 *Ga.* 256 (1) (56 S. E. 293); *Atlanta Banking &c. Co.* v. *Chastain,* 150 *Ga.* 640 (1) (104 S. E. 628); *Walker County Fertilizer Co.* v. *Napier,* 184 *Ga.* 861 (1) (193 S. E. 770); *Meeks* v. *Meeks,* 5 *Ga. App.* 394 (1) (63 S. E. 270).

■ The following assignment of error to the direction of a verdict in this case: "To this directing a verdict by the court in favor of the defendant in error against the plaintiffs in error, the plaintiffs in error excepted, now except, and assign the same as error upon the ground that said directing a verdict was contrary to law," is a sufficient assignment of error to raise the question as to whether the evidence demanded the verdict directed. See *Mullis* v. *McCook,* 185 *Ga.* 171 (1) (194 S. E. 171), and cases cited therein.

■ It appears from the evidence that, on February 1, 1947, O. A. Selman leased the building in question to Otis Mathis for a period of ten years, commencing on February 1, 1947, and ending on January 31, 1957, at a monthly rental of $85 payable on the first day of each month. The lease contract contained the following stipulations: "It is further agreed by the lessee that upon his failure to pay the rent when due, the lessor has the right and option to declare this lease void and cancel same and repossess said property.

"The lessee agrees to pay all light, water and gas bills in connection with said building, promptly when due.

"It is further agreed by the lessee that he will not sublet the premises or any part thereof without the consent of said lessor. . .

"Lessor is to take care of the roof only. The expense of any painting or other improvements must be borne by the lessee."

This lease contract was transferred by Otis Mathis to I. O. Arnold on October 31, 1947, with the consent and approval of O. A. Selman.

O. A. Selman testified, in part, to the effect that he had never consented for Arnold to sublet the described building to anyone; that after going into possession, Arnold paid the first few items of plumbing expenses; that later Selman had a sewer line put in from the building at a cost of $300 and that he also paid $28 for having the water meter fixed; that the toilets and drains became stopped up and he had to have the sewer line put in on that account; that Selman had requested Arnold to have the sewer line fixed, but that he had refused to do so; that Selman called on Arnold to pay the expenses thus incurred, but that Arnold refused to do so; that in April, 1950, Arnold's place of business was sold before the courthouse door (that is, the fixtures and equipment of the café located in the leased building); that Selman had not accepted any rent from anyone for the building since the March, 1950, rent; that after the restaurant equipment was sold, Taylor said he owned it, and that Arnold was running the place for him; that, after the sale of the fixtures, Selman told Zen Taylor, who bought the fixtures, that if he did not pay the rent and straighten the matter out in a business-like way, Selman was going to bring suit, and Taylor promised to come back and make arrangements, but he never did; that $150 per month is a reasonable rental for the property, with the landlord assuming the obligation of the upkeep of the property; that Arnold had been paying $85 per month rent all the time; but that after the fixtures in the restaurant were sold, Selman told Taylor and Arnold that he would rent the premises for $125 a month with the understanding that it would be without litigation, or for $150 a month if the matter went to court.

J. H. Edge, bookkeeper for O. A. Selman, testified to the effect that $85 was tendered by Arnold for the April, 1950, rent a day or two after the first of the month, and it was refused; that the tender of $85 for the months of May and June was also made by Arnold, either on the first, second or third day of the month, and it was refused each time; that Edge told Arnold that he could not accept $85 per month for the previous months, but that he demanded either $125 or $150 per month; that before Selman stopped accepting the rent, it would frequently be the second or third day of the month before he got the rent money and that it had been as late as the twentieth day of the month; and that, during the six-months period before the rent was refused by Selman, Arnold paid the rent on October 4, 1949, November 4, 1949, December 5, 1949, January 11, 1950, February 8, 1950, and March 3, 1950.

I. O. Arnold testified to the effect that he had the sewer fixed inside the building, under the toilets, and that Selman told him that if he would pay $125 per month rent, Selman would have the sewer fixed on the outside, but that Arnold did not accept this offer; that the sewer line from the building out to the street was installed sometime before the first of June, 1949; that after Zen Taylor bought the fixtures of the restaurant at the sale, Arnold remained in possession of the building and did not give it up; that Arnold paid $85 rent to Selman on April 1, 1950, for the month of March, 1950, and the next month he carried $85 and when Edge counted the money, and said "$85," Selman told Edge not to acept that rent as he would have to have $125 from then on; that when he tendered the rent for the month of April, Selman said he would never accept it; that the same thing happened when he went back on the first of June, and the next month, to tender the rent; that Selman never made demand on him for possession of the building in which the restaurant was located, nor did he call on him to pay for the sewer line; that his only discussion with Selman about the sewer on the outside of the building was over a year ago, when Selman wanted to change Arnold's lease to $125 per month and said that he would fix the sewer, but Arnold declined to accept this proposal; that on the day of the sale, Selman told Arnold that the rent would be $125 per month from then on; that Taylor bought the fixtures at the

sale for Arnold; that Arnold had been operating the business from that time as he had operated it theretofore; that he, Arnold, did the hiring and firing of the help, did the buying and paid all the bills; and that he had no written agreement with Taylor and had never leased or turned the property over to Taylor.

Under the evidence, a valid lease of the described building existed between Selman and Arnold at the time the dispossessory warrant was sued out. The mere fact that the fixtures in the building were sold and purchased by Taylor did not revoke Arnold's lease, nor did this create the relation of landlord and tenant between Selman and Taylor. The jury would have been authorized, under the evidence, to find that Arnold remained in possession of the building and continued to operate the restaurant after the sale, the same as he did prior thereto. His lease of the building, under its terms, does not expire until January 31, 1957, and, as long as he paid the rent and complied with the terms of the lease, he had a right to the possession of the building, regardless of whether he operated a restaurant therein or let it stand vacant. There was no evidence that he sublet the premises or transferred his lease to Taylor.

The evidence shows that Arnold tendered the monthly rental of $85 (this being the amount specified in the lease) to Selman, after the sale, for the month of April, 1950, that the money was refused, and that like tenders and refusals of rent were made for May and June, 1950. Tender of payment is equivalent to payment. *Life & Casualty Ins. Co. of Tenn.* v. *Jordan,* 69 *Ga. App.* 287, 298 (25 S. E. 2d, 103). The tenders were made a day or two after the first day of the month, but it was the practice and custom of these parties to pay and accept the rent a few days after the first day of the month. For instance, the evidence shows that for the six months immediately preceding the month when Selman refused to accept the tendered rent, the rent was paid on the 4th, 5th, 11th, 8th and 3rd of the month, respectively. "A landlord is not entitled to a dispossessory warrant for failure to pay rent on a day named, where strict adherence to the terms of the lease contract has been waived by the landlord and no demand has been made for the rent on the day named or at any other time, and the rent is tendered to the landlord before the commencement of the dispossessory-

warrant proceeding." *Mahoney* v. *McKenzie,* 27 *Ga. App.* 245 (2) (107 S. E. 775). See Code, § 20-116, as to mutual temporary disregard of the terms of a contract by the parties thereto.

In these circumstances, the jury would have been authorized to find that the rent was not due when the dispossessory warrant was sued out and that no demand for possession of the building had been made on Arnold by Selman before the proceeding was begun. A demand on the tenant for possession of the premises is a condition precedent to the right of the landlord to dispossess the tenant summarily under the Code, § 61-301. *Bussell* v. *Swift,* 50 *Ga. App.* 148 (1) (177 S. E. 277).

The evidence failed to show that the relation of landlord and tenant existed between Selman and Taylor. Such relation is indispensable in order to maintain a dispossessory-warrant proceeding. Code, § 61-301; *Watson* v. *Toliver,* 103 *Ga.* 123 (29 S. E. 614).

■ Accordingly, under the evidence and the law applicable thereto, the trial judge erred in directing a verdict in favor of the plaintiff against the defendants.

*Judgment reversed. Felton and Worrill, JJ., concur.*