## WOLFE *v.* GEORGIA RAILWAY AND ELECTRIC COMPANY.

If it be actionable per se, as against a street railway company, for its conductor, in endeavoring to comply with the statute requiring the separation of white and colored passengers, to negligently mistake a white passenger for a colored one, and, in the presence and hearing of others, inform him that he must be seated in the portion of the car set apart for negro passengers, it is essential to the maintenance of such an action that the petition allege the plaintiff to be a white man. The petition in

the present case not containing such necessary allegation, it was properly dismissed on general demurrer.

Argued June 24, 1905.—Decided January 13,,1906.

Action for damages. Before Judge Reid. City court of Atlanta. November 17, 1905.

This was an action for damages against a street railway company. The petition was dismissed on general demurrer, and the plaintiff excepted. The plaintiff's case, as made by his petition, is substantially as follows: On a day stated, the plaintiff, accompanied by his sister, boarded a car of the defendant at a designated point in the city of Atlanta, for the purpose of being transported to another point reached by the lines of the defendant company. He paid the conductor the required fares for himself and his sister, and asked for and received transfers to the line which would take him to his destination; and at the proper transfer point he boarded a car on this line. The car to which he and his sister were transferred had two long seats, one on each side of the car, with a broad aisle between. Plaintiff and his sister entered the car from the rear, walked forward, and seated themselves in the front part of the car. Under the laws of Georgia, railroad companies are required to separate the white and negro passengers as much as practicable; and the defendant company has a regulation, which is conspicuously posted in many of its cars, requiring white passengers to seat from the front, and negro passengers from the rear, of cars. On the occasion in question there were a number of passengers in the car, the white passengers being seated toward the front and the negroes toward the rear. "Petitioner further shows that in Georgia the negro race is recognized and considered inferior to the white race, and that the law of the State of Georgia recognizes this distinction in various ways, notably by its provision to separate the races in railroad cars, by laws against the intermarriage of members of the two races, and by laws preventing the mingling of the said two races in the common schools of said State." After plaintiff and his sister had seated themselves, and while they were engaged in conversation, the conductor came to them and took up their transfers. As he did so, he said to plaintiff: "You can not sit there." "Petitioner thereupon arose, thinking there must be something the matter with the seat, and asked the conductor, 'Where do you wish me to sit?' The conductor thereupon replied: 'You must sit in the rear portion of

the car.' Petitioner then said, 'Where?' to which the conductor replied: 'Beyond that white gentleman.' Petitioner thereupon responded, 'Why do you wish me to sit there?' to which the conductor replied: 'That is all right. Sit down here,' indicating space between the last white man and a negro, whereupon petitioner and his sister both asked, 'What is this for?' to which the conductor replied: 'Because white people·seat from the front and negroes from the rear of the car.'' Petitioner thereupon asked: 'What has that to do with me?' and the conductor responded: 'Haven't I seen you in colored company?' Petitioner's sister then addressed the conductor as follows: 'Do we look like colored people?' and petitioner, for the first time understanding the import of the conductor's language, demanded an explanation and apology, whereupon the conductor stated that he might be mistaken, but that he thought he had seen petitioner with some colored people.'' This colloquy took place in the presence of all the passengers, some of whom knew plaintiff, and was in a tone of voice loud·enough to be heard all over the car; and plaintiff was extremely mortified and humiliated by the occurrence. The ''conductor by his statements intended to charge and did charge petitioner and his sister with being negroes, . . and the effect of said colloquy was to create on the minds of strangers that petitioner had colored blood in his veins, and that he was attempting to pass as a white person; that the effect of said colloquy on persons who knew petitioner was that as a white person he had been associating with negroes.'' Plaintiff's feelings were outraged by the conductor's conduct, not only on his own account, but by reason of the humiliation and mortification which resulted to his sister under the circumstances. ''Petitioner shows that [neither] he nor his sister had ever been seen with, nor had they associated with negroes, and there was absolutely no excuse for such a statement on the part of the said conductor, and that said conduct was the result of the greatest negligence on his part.'' The petition closes with a prayer for judgment for damages in the sum of $2,000, and for process.

*Dorsey, Brewster & Howell,* for plaintiff. *Rosser & Brandon, W. T. Colquitt* and *B. J. Conyers,* for defendant.

FISH, C. J. (After stating the case.) ·Plaintiff bases his claim to recover upon an alleged violation of the well-established rule, that

it is the duty of a railroad company to protect a passenger from injury, violence, insult, and ill treatment at the hands of the servants of the carrier, who are in charge of or connected in any way with the carriage in which the passenger is being transported. *Savannah Ry. Co.* v. *Quo,* 103 *Ga.* 125; *Georgia Ry. & El. Co.* v. *Baker,* 120 *Ga.* 991, and cit.; Hutch. Car. §595-6; Thomp. Neg. §3186; Booth on Street Railways, §682. The question sought to be made by the petition is, whether it is an insult, for which an action lies against a street railway company, without an allegation of special damages, for a conductor on one of its cars, while endeavoring to comply with the statute requiring him as far as practicable to separate white passengers from colored passengers, to negligently mistake a white passenger for a colored one, and, in the presence and hearing of other passengers, to inform him that he must be seated in that portion of the car set apart for negro passengers. As to whether it is actionable per se to call a white man a negro, or to publish him as such, see Eden *v.* Legare, 1 Bay (S. Car.), 171; King *v.* Wood, 1 Nott & McCord (S. C.), 184; Barrett *v.* Jarvis, Tappan (Ohio), 244; Johnson *v.* Brown, 4 Cranch (C. C.), 235; Scott *v.* Peebles, 2 Smedes & M. (Miss.) 546; McDowell *v.* Bowles, 8 Jones L. (N. C.) 184; Spotorno *v.* Fourishon, 40 La. Ann. 423; Upton *v.* Times-Democrat Pub. Co., 104 La. Ann. 141. However interesting the question sought to be made in the present case may be, and whatever opinion we may entertain in regard to it, we are not authorized, under the view entertained by a majority of the court, to decide it, for the reason that the petition fails to allege that the plaintiff is a white man. Such an allegation was, of course, essential to maintain the contention that he was insulted by the language used by the conductor. It is true that the petition alleged, "that the effect of said colloquy was to create on the minds of strangers that petitioner had colored blood in his veins, and that he was attempting to pass as a white person; that the effect of said colloquy on persons who knew petitioner was that as a white person he had been associating with negroes." Merely alleging the effect the colloquy created on the minds of others is very far from alleging plaintiff to be a white man, as such effect might have been produced though the plaintiff may not be a white man. The allegation as to the effect of the colloquy upon strangers does not show, or clearly indicate, that the plaintiff is a white man, that is, a mem-

ber of the Caucasian race. The plaintiff might be a mulatto and, still the effect of the conversation upon the minds of persons to whom he was a stranger might be that he had colored blood in his veins, and that he was attempting to pass as a white person. The allegation "that the effect of said colloquy on persons who knew petitioner was that as a white person he had been associating with negroes," simply amounts to an allegation that the effect of the colloquy upon such persons was that the plaintiff had been associating with negroes, as a white person. A given conversation might produce the effect upon the minds of persons who knew a mulatto, or a Chinaman, that he, *as* a white person, had been associating with negroes, that is, that he had been associating with negroes, as a white person, or, in other words, posing and passing among negroes as a member of the Caucasian race. The general demurrer assailed every substantial imperfection in the petition, and as the petition was defective in a substantial particular, the demurrer was properly sustained.

*Judgment affirmed. All the Justices concur, except Beck, J., not presiding, and*

COBB, P. J., and EVANS, J., dissenting. Certainty to a common intent is all that was required, under the rules of common-law pleading, in a declaration. Every reasonable presumption was indulged in order to sustain a declaration. Statements involving a less degree of certainty than that above referred to were sometimes permissible in a declaration, when they would not be allowed in a plea. A statement by way of recital, instead of a direct allegation, was insufficient in a plea, though it was otherwise in a declaration. 1 Chitty on Pl. (16th Am. ed.), 257. The rule is even more liberal in Georgia than it was at common law. However, even under the common-law rule, the allegations of the petition were certainly, as against a general demurrer, amply sufficient to show that the plaintiff was a white person. The petition containing such allegations, the case should have been determined upon its merits.