PATE *et al. v.* NEWSOME.

No. 6682.   FEBRUARY 27, 1929.

*W. A. Mason, Marion Turner,* and *T. S. Felder,* for plaintiffs in error.

*Lawson & Ware* and *Hal Lawson,* contra.

RUSSELL, C. J. Omitting, for the present, the prayers for equitable relief and other equitable features which fix jurisdiction in this court: The case started in the superior court as a common-law action—an ordinary suit on promissory notes amounting to $6000, given by Pate to Mrs. Newsome and her husband. Mr. Newsome, one of the joint payees of the note, having died, and his wife having been appointed administratrix of his estate, the case properly sounded Mrs. Lana P. Newsome and J. T. Newsome by his administratrix v. O. W. Pate. The defendant pleaded payment, but as ancillary to his plea he asked for specific performance of a contract which he alleged was made by the acceptance of the letter dated May 4, 1926, based upon the agreement of November 11, 1924, and incidentally he asked for cancellation of all anterior contracts which would naturally be avoided by the grant of specific performance. So the controlling question in this case is whether Pate is entitled to specific performance as against Mrs. Newsome and J. T. Newsome by his administratrix. If he is entitled to specific performance, the other relief prayed for naturally follows.

If the defendant is not entitled to specific performance, his prayers for further and additional relief are immaterial and can not be granted. After a very careful consideration of the record in this case, we have become convinced that under the facts and under the law applicable thereto the verdict rendered in this case was demanded. We keep in mind that a verdict can not be lawfully directed if any other verdict than that returned could be legally rendered; for the writer adheres to the doctrine set forth in the first opinion ever delivered by him upon a court of review. *Davis v. Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209). In the case now before this court the defendant Pate assumed the burden of proof. In other words, he admitted that the plaintiff was entitled to recover in the suit upon the notes, unless he established the fact that he had paid the notes. Therefore he can not recover unless he proves that he has paid the notes according to the allegations of his equitable cross-action. If he has paid the notes, he is entitled in equity to have specific performance as prayed. How has he paid the notes? According to his allegations, he has paid $3223 in cash and has given notes payable to Mrs. Lana P. Newsome individually for the remainder of the $6000. In order to entitle one to specific performance, the evidence must be clear and convincing, and it is required in cases of a parol contract for the sale of land that the jury must be satisfied beyond a reasonable doubt before they are entitled to set up such contract in the face of the provision of law which declares that all contracts concerning the sale of land shall be in writing.

In our opinion the evidence fails to show compliance with the agreement of November 11, 1924; and of course that contract in writing was the basis of the subsequent negotiations which culminated in the letter of May 4, 1926. The agreement of November 11, 1924, was itself but an amendment of the original instrument executed April 26, 1924, under which J. T. Newsome and his wife, Lana P. Newsome, bound themselves to sell Pate the land. The defendant admits that his rights depend upon all three of the instruments taken together. He thus pleads. And so he can not recover upon any one of these instruments alone. He can not recover if his proof is in conflict with the requirements of the three writings, all reasonably construed together. The defendant does not dispute or seek to vary the terms of either of the first two

instruments. , He does seek to add by parol a new qualifying term which is not found in the letter. The first writing provides that "in the event, upon the maturity of said loan, the said O. W. Pate shall be able to do so, he may obtain on said lands the largest loan obtainable, with which he shall pay off the present loan and with the balance reduce the indebtedness on the purchase-price as far as the same will go, and execute to the obligors a second mortgage on said lands to secure the remaining part of the purchase-price, in accordance with the terms hereof as to yearly payments and rate of interest." The only modification of this contract during the lifetime of J. T. Newsome recited that Saunders had assumed the $3000 indebtedness and that Pate desired to sell other lands described in the bond for title; and for the purpose of enabling Pate to execute title to Saunders and such other parties as he might be able to sell parts of the land, Lana P. Newsome and J. T. Newsome agreed that upon the payment *of the $3000 note by Saunders* they would execute to Pate title to the land theretofore sold by him to Saunders, and execute good title to Pate to such other lands described in the bond for title as he might sell to others, upon the payment to them in cash of not less than $50 per acre for such land as Pate might sell. Thus stood the matter when J. T. Newsome died. On May 4, 1926, W. A. Mason, representing Mr. Pate, and in his presence, wrote in a letter to Lawson & Ware, a firm of attorneys, a proposition which he begged they convey to their client. This letter stated that "we have obtained a loan" for $4000 from the Federal Land Bank of Columbia on 96 acres of the Newsome place retained by Mr. Pate; that after certain stated expenses "there will be $3232 to be paid to Mrs. Newsome and her representative capacity and as an individual, to be applied on the purchase-price;" that they would deliver to Mrs. Newsome $1500 of notes payable $500 per year, due on January 1, 1927-28-29, said notes being executed by J. F. Saunders and secured by 45 acres of the J. T. Newsome land. Pate further agreed to execute a second mortgage for the balance of the purchase-price, secured by the 96 acres of land which he had retained.

Since a verdict can not be directed where there is conflict in the evidence, unless the proved facts can sustain no other finding than that directed, and since there is much conflict in the testimony of Pate and Lawson and circumstances adduced in support of the tes-

timony contradictory of the other, we can assume that the jury would have believed the testimony in support of Pate,—this because the verdict was directed against him. It is not disputed, however, that, whatever the cause, the ordinary refused to grant an order requiring the administratrix to make title to the land, and that the application therefor was dismissed. It is also in evidence that Mrs. Lana P. Newsome is not the only heir of her husband, but that J. T. Newsome has children of whom Mrs. Lana P. Newsome is not the mother, and some of whom are minors. These are material facts which the court had before it in ascribing verity to the testimony in behalf of the defendant wherever the testimony of the plaintiff came in competition with it. So the question arises, did the showing in behalf of the defendant demand a verdict in his favor? How far can an administrator lawfully vary and change the contract of his intestate without the order of the court of ordinary or a court of chancery? Was the administratrix in this case in a position, without the authority of any court, to accept the proposition contained in the letter of May 4, 1926? Can an attorney accept a check or anything other than cash in settlement of his client's claim? Treating the sum represented by the $3223 check to have been paid in cash, can an administratrix take "$3232" to be paid to her in her representative capacity as well as in her individual capacity, and apply all of it on the purchase-price accruing to her in her representative capacity, while at the same time retaining for her own benefit the other one half of the purchase-price in notes bearing interest and secured by 45 acres of land and personal indorsement and a second mortgage on 96 additional acres of land, especially when some of the heirs of the intestate are minors, without any order of court to authorize this division? We shall consider these questions in reverse order.

We are of the opinion that when J. T. Newsome died the original contract of April 26, 1924, was (without an order of court granted to his personal representative) not subject to any change by his administratrix, except upon express authorization by the ordinary or by the judge of the superior court upon a petition for that purpose, with which all other heirs of the estate should be served; or if any of the latter happened not to have guardians, for such a one the court should have appointed a guardian ad litem. It might appear, and it may have appeared to the administratrix

in this case, that in accepting all of the sum due to the estate in cash she was favoring the other heirs and she herself as an individual taking all the risks. This is no answer to the proposition that the court of ordinary or the superior court, as the case may be, is alone clothed with the exercise of discretion as to the division of this fund. The original agreement and the amendment of November 11, 1924, did not look to a division of the payments. The division, if any was had, was to be a matter exclusively for the two parties, Lana P. Newsome and J. T. Newsome; and it is very plain from a reading of that agreement that there was no reference as to cash or security, whichever may have been preferable, as between them. It may be that Mr. Newsome intended, had he lived to collect his share of the money himself, to have given his minor children a perfectly safe investment paying interest, rather than to have given them any actual cash. Who knows? The law does not give to the administrator of an intestate the power to make new contracts as to the disposition of the property of the decedent without the sanction of a court. The administrator can carry out the contracts of the deceased, but he can no more make new contracts than the dead man himself.

We shall discuss questions 2 and 3 together. Section 4956 of the Code forbids an attorney at law to accept, in payment of any claim of his client, anything except full payment in cash. The testimony in behalf of the defendant is that the attorney for the administratrix accepted a check,—to place the evidence in behalf of the defendant in its strongest light. The testimony of Pate, the defendant, that the administratrix must have ratified her attorney's acceptance of the check, is a circumstance much weaker than the positive testimony to which we have just referred, because, although we must assume that Mrs. Newsome said what Pate said she said, it is not conclusive upon the point that she accepted the check. She could well have known that Lawson had the check, and she may or may not have believed the check to be good, and yet she might have deferred her acceptance of the check until she had settled the entire matter with her lawyer. If this circumstance proved anything, it would at most establish only a ratification on the part of the administratrix of Lawson's accepting the check. So we repeat that the positive testimony of the defendant only established the fact that Lawson, in spite of his denials and those

of Mrs. Newsome, was the attorney of the administratrix; that, in spite of their denials, Lawson had the $6000 of notes in suit for collection; and that Mrs. Newsome, having accepted the proposition contained in the letter of May 4, 1926, authorized him to collect $3232.. In other words, Mrs. Newsome ratified all that Pate says was done towards making a contract in the terms of the letter of May 4, 1926. According to the testimony in behalf of the defendant, Lawson accepted the check when the law forbade it. Section 4956 of the Code is sound law based upon sound policy. A violation of that law is an act contrary to public policy, and for that reason it can not become law merely through the violation of the law whether by an attorney or an administrator. No better proof of the fact that the rule on this subject is in accord with the soundest policy is needed than the circumstances and the result in this case. If the theory of counsel for the plaintiff in error is correct, we have minor heirs of the deceased J. T. Newsome holding a piece of paper admitted by all to be worthless. The attorney could not accept it without the ratification of the administratrix. The administratrix could not accept it without authority from a court. In either view a jury would not have been authorized to find that the heirs of J. T. Newsome had received payment for any of the property represented by the papers in the hands of his administratrix at the time of his death. It would be hard law that would make a child who had not reached the years of accountability and discretion lose a part of the estate due her from her dead father, because of an agreement made regardless of her interest between persons of mature years, the defendant on the one side and the plaintiff and her lawyer on the other. Such a transaction is not within the jurisdiction of equity.

We have just expressed our opinion that an administrator can enforce or perform contracts entered into by his intestate in the lifetime of the latter, but that he can not make new contracts for the deceased. Then, can he change the contract of the decedent of his own volition and at his own discretion. Can he work a novation in the terms of a contract made by the dead man, any more than he could originally have made such contract in his behalf without his authority? In our opinion, to ask the question is to answer it. Jurisdiction in all cases of administration is placed in the court of ordinary, a court of original jurisdiction which is

shared by no other court except that in special instances a court of equity may have concurrent jurisdiction, and upon certain equitable grounds it may supersede in its jurisdiction the inherent right of the court of ordinary to administer. The record before us does not disclose that any application was ever made or ever thought of by the parties in this case. The proposition of May 4, 1926, was prepared in the office of Lawson & Ware, and, according to the defendant's testimony, was dictated by Mr. Mason, the attorney for Pate. There had been a petition in March, 1926, asking an order from the ordinary requiring Mrs. Newsome, as administratrix, to make a deed to Pate as the holder of a bond for title, the application alleging that "all of the purchase-money having been paid." It is enough to say that this allegation was made in the petition nearly two months before the letter of May 4 was written by Mr. Mason. It is undisputed that the purchase-price had not been paid at the time of making the application.

Having dealt with the evidence in the case as introduced by the defendant, we are of the opinion that the court did not err in directing a verdict for the plaintiff. But the court may and could have with propriety have reached the same result upon a consideration of all of the evidence. We have only applied the rule which is applicable in all ordinary cases; and we have reached the conclusion, under the principles stated, that the defendant, in his cross-action assuming the burden of proof, failed to carry it by his own testimony, treating it as uncontradicted. In a case seeking specific performance of a parol contract for the sale of land, unless there is evidence that the contract has been fully performed a rule of evidence different from that stated above is applied. He who seeks to enforce specific performance of a contract, submitted, it is true, in writing, but the acceptance of which depends upon oral negotiations, is required by our law to prove such contract beyond a reasonable doubt. The trial judge properly held, upon consideration of all the evidence, that no jury could have found for the defendant beyond all reasonable doubt.

*Judgment affirmed. All the Justices concur.*

ATKINSON, J., concurs in the result.