DECIDED JULY 20, 1931.

*Maddox, Sapp & Maddox,* for plaintiff in error.
*R. Carter Pittman,* contra.

20866. COZART, executrix, *v.* MOBLEY, superintendent of banks.

DECIDED JULY 25, 1931.

632

W. A. *Slaton,* for plaintiff in error.   *Earle Norman,* contra.

BELL, J.   (After stating the foregoing facts.)   At the outset it is proper to state that Washington Exchange Bank was incorporated by an act of the General Assembly passed in 1888 (Ga. L. 1888, p. 73), and section 8 of this act was as follows:   "All the assets of the bank shall be liable for its debts, and each stockholder shall be individually liable for the debts of the corporation to the extent of his or her unpaid stock subscription, and in addition thereto each stockholder shall be individually liable for the debts of the bank

equally and ratably, and not one for another, in an amount equal to the par value of the stock owned by him or her at the time the debt was created." Another section provided that "the board of directors shall cause to be issued to each stockholder a certificate of stock truly representing his or her interest, and such stock shall be held bound to the bank for any dues or indebtedness by said stockholder, and said bank shall have a lien upon such stock superior to all other liens, . . and no stockholder who may be in any wise indebted to said bank, whether as principal, security, endorser, or otherwise, while so indebted [shall?] sell, transfer, or dispose of his stock without consent of the board of directors; and such transfer, sale, or disposition, or any transfer, sale, or disposition by a stockholder of his or her stock, in order to be valid, must be made on the books of the corporation by the owner or his duly constituted attorney in fact, and under such rules and regulations as may be prescribed in the by-laws, and any other sale, transfer, or disposition is void as against the company." Section 6.

By the will involved in this case, the only authority or duty of the executors was to pay the debts of the testator and then to deliver the property to the legatees. The will did not direct that a division be made by the executors, but merely "gave" the property to the widow and children, "share and share alike." *Peck* v. *Watson,* 165 *Ga.* 853, 865 (142 S. E. 450, 57 A. L. R. 560). According to the petition, the widow alone qualified as executrix. The powers and duties of an executor are fixed by law and the provisions of the will, and, except as to such contracts as the executor may be thus authorized to make, the assets of the estate are bound only for such debts as were contracted by the testator during his lifetime. The duty of an executor "begins and ends with the collection of the assets of the estate, and paying the debts and legacies." *Prinlup* v. *Trammel,* 25 *Ga.* 240, 242; *Walton* v. *Reid,* 148 *Ga.* 176 (96 S. E. 214); *Pate* v. *Newsome,* 167 *Ga.* 867 (2) (147 S. E. 44). Those who deal with an executor are bound to take notice of the limitations upon his authority. *Whitehurst* v. *Mason,* 140 *Ga.* 148 (78 S. E. 938). In the absence of anything to the contrary, after the lapse of twenty years from the qualification of an executor, there is a presumption that all the debts of the estate have been paid and that the executor has assented to the legacies. *Hodges* v. *Sluart Lumber Co.,* 128 *Ga.* 733 (58 S. E. 354). Where

it appears that the debts have been *in fact* paid, an assent to the legacies will be implied (*Webb* v. *Hicks,* 117 *Ga.* 335 (3), 43 S. E. 738), and where the debts have been paid and the legacies assented to, the executor, as such, has no further authority to deal with the property thus passing by the terms of the will. *Phillips* v. *Smith,* 119 *Ga.* 556 (46 S. E. 640); *Day* v. *Cox,* 130 *Ga.* 537 (3) (61 S. E. 121); *Hood* v. *Hood,* 169 *Ga.* 378 (4) (150 S. E. 552).

In the instant case it appears from the petition that the testator died in 1891, and that the executrix immediately qualified. The charter of Washington Exchange Bank provided that each stockholder should be individually liable for the debts of the corporation, in an amount equal to the par value of the "stock owned by him . . at the time the debt was created." But the bank continued to be a going concern until 1925, when it failed and went into the hands of the superintendent for the purpose of liquidation. This was about thirty-four years after the death of the stockholder and the qualification of his executrix. It should be presumed that after twenty years the debts of the estate were paid and that the legacies were or ought to have been assented to, and thus that the estate had ceased to be the owner thereof long before the bank failed. This presumption would not be overcome merely by reason of the alleged facts that the executrix kept the estate intact, without making a distribution to the legatees, and in the meantime allowed the stock to remain registered upon the books of the bank in the name of the testator and returned the other property for taxation in her name as executrix.

An executor may not capriciously withhold his assent to legacies, nor render the estate answerable for the contingent liability of the testator as a stockholder by failing to obtain a discharge, and unnecessarily and unreasonably prolonging administration. Civil Code (1910), § 3896; *Pate* v. *Newsome,* supra; *Clark* v. *Clark,* 167 *Ga.* 1 (3) (144 S. E. 787). The estate of a deceased stockholder is not liable where before the insolvency of the bank the beneficial ownership of the stock passed from it to legatees, and the debts of the bank were created at a time when the corporation or the creditors should have known of this fact. If the legacies have been assented to, it is not essential to the passing of title to the legatees that the executor has not perfected a division of the estate, where the will does not so direct, but the legatees become tenants in

common. *Walkins* v. *Gilmore,* 121 *Ga.* 488 (4) (49 S. E. 598); *Haden* v. *Sims,* 127 *Ga.* 717, 720 (56 S. E. 989); *Citizens Bank* v. *Citizens & Southern Bank,* 160 *Ga.* 109 (127 S. E. 219).

The charter of the bank in question provided that all sales, transfers, or other disposition of stock by a stockholder should be void as against the bank unless made on the books of the bank by the owner or his duly constituted attorney, and under such rules and regulations as might be prescribed in the by-laws; and article 18, section 3, of the act of 1919, known as the banking act, provides that "whenever a stockholder in any bank is individually liable under the charter, and shall transfer his stock, and have such transfer entered upon the books of the bank or give to the bank written notice thereof, he shall be exempt from such liability by such transfer, unless such bank shall fail within six months from the date of the entry of such transfer, or from the delivery of such notice to the bank." But neither of these provisions should be construed so as to cast a liability upon an estate merely because the representative failed to cause a proper transfer to be made upon the registry of the bank, where the estate in fact ceased to be the owner of the stock, and where from facts and circumstances of which the bank had knowledge it appeared or should have been presumed that a sufficient time had elapsed for the estate to be wound up to the extent of paying the debts and assenting to legacies. After the expiration of such period the estate could no longer be held liable as a stockholder for the debts of the bank created during such relationship. The provisions as to the registry of transfers of stock upon the books of the corporation were not intended to *impose a liability* upon the stockholders; but each of them, whether the act of 1888 or the act of 1919 be applicable, simply provided a method by which a stockholder *may relieve himself* from a pre-existing liability arising under the charter of the corporation. *Wheatley* v. *Glover,* 125 *Ga.* 710 (54 S. E. 626); Brunswick Terminal Co. *v.* National Bank of Baltimore, 192 U. S. 386 (24 Sup. Ct. 314, 48 L. ed. 491).

Where a bank is aware of facts from which it knows or ought to know that shares of stock standing upon the books in the name of a deceased member have in fact passed to legatees, it will be charged with further knowledge that the executor has no authority thence to treat the stock as the property of the estate and can not longer

hold the estate liable as an apparent owner of the stock. In such a case, if the executor has any duty to perform toward perfecting a transfer of the stock upon the books of the corporation, the bank is bound to know that in failing to perform this duty the executor is violating his trust, and can not take advantage of the fact that the transfer was not registered as required by law. *Worthy* v. *Johnson,* 10 *Ga.* 358 (2), 361 (54 Am. D. 393); *Sellars* v. *Cheney,* 70 *Ga.* 790 (3); *Wilkins* v. *McGehee,* 86 *Ga.* 764 (2) (13 S. E. 84); *Wagnon* v. *Pease,* 104 *Ga.* 417 (4) (30 S. E. 895); *Richards* v. *Edwardy,* 138 *Ga.* 690 (2), 698 (76 S. E. 64). The rule is of course otherwise as to an individual who holds stock in his own right and whose power to bind himself by contract or estoppel is not subject to the limitations which are placed by law upon the authority of executors, trustees, and the like. *Harris* v. *Taylor,* 148 *Ga.* 663 (6) (98 S. E. 86); *Candler* v. *Mobley,* 37 *Ga. App.* 259 (139 S. E. 732).

After the lapse of a reasonable time in which to pay debts and to assent to legacies, an estate represented by an executor is no longer the apparent owner of corporate shares which were held by the testator at the time of his death, but which were intended to pass to others by the terms of his will, although, if *within such reasonable time* the estate has in fact been kept together for the purpose of such administration, the stock may be treated as the property of the estate, for the purpose of assessment to pay debts created by the bank during such ownership but after the death of the stockholder. It is not doubted that in a proper case an estate may be held liable for a stock assessment even where the bank became insolvent after the death of the testator (Richmond *v.* Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. ed. 864; Flash *v.* Conn, 109 U. S. 371, 3 Sup. Ct. 263, 27 L. ed. 966; Bailey *v.* Hollister, 26 N. Y. 112); but from the presumptions which arise from the petition in the present case it must be assumed that the estate had ceased to be the owner of the stock many years before the bank became insolvent, and there is no allegation that any of the debts of the bank were created during the lifetime of the testator or during a period thereafter in which the estate could be warrantably treated as owner. This allegation would seem to be necessary in view of the fact that the bank did not fail until 1925, and since there is a presumption not only that the debts of the testator but also that

such debts of the bank as existed at the testator's death were paid within twenty years, or as early as sometime in 1911,—which was approximately fourteen years before the bank failed. *Trust Company of Georgia* v. *Mobley*, 40 *Ga. App.* 468 (150 S. E. 169); *Mobley* v. *Phinizy*, 172 *Ga.* 339 (157 S. E. 182); *Dillard* v. *Mobley*, 43 *Ga. App.* 253 (158 S. E. 534).

Even if the executrix had the duty of causing the stock to be transferred upon the books of the corporation, the estate would not be estopped by her failure to perform such duty, where the bank must have known of her breach in this regard, as from the presumption that the estate had become ripe for administration and should have been settled. *Lufburrow* v. *Newton*, 34 *Ga. App.* 325 (129 S. E. 439); *Worthy* v. *Johnson*, *Sellars* v. *Cheney*, *Wilkins* v. *McGehee*, *Wagnon* v. *Pease*, and *Richards* v. *Edwardy*, supra. Whether such an estoppel could be raised in other circumstances need not be decided.

Banks commonly pay dividends, and in the absence of allegation to the contrary it should be assumed that they were paid by the bank in question. In fact the petition alleges that some dividends were paid, but the dates are not stated. By receipts or endorsed checks for dividends, if in no other way, the bank was put upon notice that the stockholder had died and that his estate was in the hands of an executor. Moreover, the fact and date of his death are set forth in the petition, and a copy of the will is attached, and, in the absence of contrary averment, knowledge of such facts, including the contents of the will, should be attributed to the bank from about the time of the testator's death. *Krueger* v. *McDougald*, 148 *Ga.* 429 (96 S. E. 867); *Wolfe* v. *Georgia Ry. &c. Co.*, 124 *Ga.* 693 (53 S. E. 239). Ever thereafter it was the duty of the bank to inquire into the authority of the executrix, either as to acts done or as to those which she failed to do with regard to the control and ownership of this stock.

The petition in effect alleges that the estate was kept together and handled in the name of the executrix for a period of more than thirty years before the bank became insolvent, but it does not say that the debts of the estate were not paid within the period after which their payment would be presumed, nor that the legacies were not then assented to, and it is rather to be inferred that the executrix either committed a breach of her official duty as to settling

the estate, or else that the property is being carried in her name as executrix merely as a convenient method adopted or concurred in by the legatees for the purpose of dealing with this property as owners and tenants in common, the executrix being herself a legatee and the mother of the other legatees, and equally interested with each of them. *U. S. Fidelity & Guaranty Co.* v. *Newton,* 37 *Ga. App.* 70 (139 S. E. 365); *Eslinger* v. *Herndon,* 158 *Ga.* 823 (4) (124 S. E. 169, 900). Prima facie, it may be taken as true that the legatees accepted the bequests provided in the will for their benefit. Civil Code (1910), § 4145; *Daniel* v. *Frost,* 62 *Ga.* 697 (2), 707.

The allegation that "under the law" the executrix in her representative capacity is the real owner of the stock adds nothing to the petition with reference to ownership, since it does not purport to be even a conclusion of fact, but is stated merely as a conclusion of law based upon the other allegations.

Up to this point we have spoken of the rights of the bank, and have said but little as to the rights of its creditors, for whose benefit this action was instituted. Since the superintendent of banks is proceeding for the benefit of such creditors, it would seem that allegations to show their want of knowledge of the facts touching this estate, and to assert that the credit was extended upon the faith of the apparent ownership of the stock by the estate, would be necessary; but regardless of this, persons extending credit to the bank were bound either to look out for themselves or to depend upon the corporate officials for information as to who were the stockholders.

By the act of December 18, 1894 (Ga. L. 1894, p. 76), it was provided that all banks and other corporations whose shareholders are individually liable under their charter shall keep on hand at all times a true and correct list of the shareholders, and it shall be the right of any creditor to inspect the same at any time during the business hours of any working day, and it was made the duty of the president and other officers to permit such inspection, on pain of prosecution for a failure to do so. In 1907 a similar provision was enacted by the legislature, as follows: "The president and cashier of every incorporated bank shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the bank, and the number of shares held by each, in

. the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors of the bank during the business hours of each day in which business may be legally transacted. A copy of such list, on the first Monday in July of each year, verified by oath of such president, cashier, or owners, shall be transmitted to the State bank examiner, to be held by him, and to be subject to inspection as herein named." Ga. L. 1907, p. 85, § 28. These provisions (except the criminal feature) were carried in the Civil Code of 1910 as sections 2250 and 2307 respectively. They do not appear to have been incorporated in terms in the banking act of 1919, although section 45 of that act is in the same language as the quoted section of the act of 1907, except that as copied in the printed laws it omits the words "and creditors" in declaring who are entitled to inspect the stock lists. No such provisions were contained in the act of 1888 incorporating Washington Exchange Bank. Such was the law, however, at least from the time of the passage of these acts until the adoption of the later banking act, even assuming that the former enactments were superseded by the act of 1919.

Thus, for a period of twenty-five years after the death of the testator the creditors had the means of informing themselves as to who were the stockholders of the bank in question, and it can not be said that these statutes were inoperative as to such creditors, although they were not originally a part of the bank's charter. *Moore* v. *Ripley,* 105 *Ga.* 556 (2) (32 S. E. 647) ; *Lamar* v. *Taylor,* 141 *Ga.* 227 (4) (80 S. E. 1085). The petition does not show that the debts now sought to be paid were not created during such period.

If the creditors did not see fit to avail themselves of the means of information which the law provided, and elected to do business with a bank whose officials did not keep a true record as to who were its shareholders, they are in no better position with respect to the alleged liability of this estate than the corporation would occupy in a suit of similar import. *Mobley* v. *Phinizy,* 42 *Ga. App.* 33 (155 S. E. 73).

Among the cases cited and relied on by counsel for the defendant in error is Matteson *v.* Dent, 176 U. S. 521 (20 Sup. Ct. 419, 44 L. ed. 571), which reaffirmed the doctrine, theretofore expressed in many cases, that so long as an estate is by operation of law the

holder of the stock it may be held responsible for any obligation accruing during that time as a liability against a stockholder; but no such state of facts was involved in that case as is presented by the instant record. As appears from the statement in that case, the stockholder died in July, 1895; and in September, 1896, a final account having previously been filed by the administrator, a probate decree was entered under which the widow and the heirs of the intestate stockholder took the ten shares of stock in proportion to their interest in the estate. The bank became insolvent afterwards· but in about sixty days. No notice of the death of the stockholder or of the allotment decree was ever conveyed to the bank, and hence no transfer was ever entered upon its books. The suit was in fact against distributees, to recover the amount of the assessment, but was brought under a statute of Minnesota providing that distributees might be called upon to pay a debt of the estate to the extent of the distributive share received, and the decision incidentally, but necessarily, involved the question of whether the liability for the assessment constituted a debt of the estate, despite the fact that the bank became insolvent subsequently to the delivery of the stock to the distributees. Only a little more than a year had elapsed from the death of the stockholder until the failure of the bank, and in the meantime no notice of the death had been given. In these circumstances it would not do to say that the stockholder or his estate did not continue to be the apparent owner for the purpose of assessment. But in the instant case the bank, with actual or implied knowledge of all the facts, continued to transact business for many years after the stock was presumed to have gone into the hands of others as legatees, and all apparent ownership and right of control by the executrix had terminated. No such presumptions were operative in the Matteson case, and it is not authority against the ruling which we now make; and the more clearly is this true in view of the later decision by the same court in Brunswick Terminal Co. *v.* National Bank of Baltimore, supra, in which the statutes of this State in reference to notice of. transfers of stock were declared to be operative, not for the purpose of imposing a liability, but merely as providing an exemption from an existing liability. The statute which is now of force in this State upon the same subject is of like character, though not in the same language, and the decision in the Brunswick Terminal Com-

pany case was approved and followed by our own Supreme Court in. *Wheatley* v. *Glover,* supra.

Article 18, section 2, of the act of 1919 provides as follows: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estate and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust fund would be, if living and competent to act and hold the stock in his own name; provided, that nothing herein contained shall relieve any executor, administrator, guardian, or trustee from individual liability as a stockholder upon any unauthorized subscription for or investment in bank made by such executor, administrator, guardian, or trustee."

While it might seem otherwise on first impression, this provision does not militate against the conclusion which we have reached in the present case. This section was not intended to extend or enlarge the powers of executors and the other representatives therein referred to, but it is merely declaratory of the general rule that an estate may be held liable for a stock assessment where the insolvency of the bank arose during the period when the estate might be properly dealt with as the apparent owner of the stock. It speaks of the liability of executors while the estates are "in their hands." Presumptively there was no estate in the hands of the executrix in the present case.

In the last analysis the instant suit is an effort to hold an estate liable merely because the executrix did not notify the bank that the title to the stock had passed into other hands, when the bank and its creditors were presumed to know of this fact.

We think the court erred in not sustaining the general demurrer to the petition; and also, upon the same reasoning, it is our opinion that the portion of the answer which was stricken on the demurrer of the plaintiff was pertinent and defensive, and therefore that the plaintiff's demurrer should have been overruled. What we have said above should dispose of the case upon the pleadings, but we find from examination that the case is yet stronger for the defendant upon the facts.

From a stipulation set forth in the bill of exceptions it is seen that "all the debts of the [testator] were paid within a few months after his death," and thus that the time for assent to legacies was

at hand, there being no provision in the will for a continuation of the business of the testator, or for the performance of any other duty by the executrix except to pay debts and pass the remaining property to the persons entitled. It further appears that, beginning in 1891, dividends were paid by the bank to "the executrix." So, the bank promptly acquired knowledge that the stockholder was dead and that his estate was in the hands of a legal representative; and from that time on it was necessary that the bank should examine the authority of such representative.

Until the children became of age the income from the property was collected by the executrix and used for the common support of herself and family and for the education of the minor legatees. As the children became of age she paid to them various amounts from the estate, which they used as they saw fit. The youngest child reached majority in 1913, and in 1920 the widow of one of one of the children was paid the sum of $10,000 in full settlement of the share of her husband, and sums were paid to the various legatees in a manner to equalize the same.

The facts as thus stated are left to speak for themselves. There is no suggestion that the executrix did not assent to the legacies at the proper time, so that the title to this stock became the property of the legatees soon after the death of the testator.

Upon the whole case we are of the opinion that the estate was not liable for the stock assessment, and therefore that the court erred in rendering judgment in favor of the superintendent and against the executrix.

This is not to hold that there is not a liability against some person or persons for the assessment sought to be enforced. If the proceeding had been brought against the legatees, a very different question would have been presented.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*