MAYOR & ALDERMEN OF SAVANNAH *v.* FAWCETT *et al.*

No. 12242. MAY 11, 1938.

*Spence M. Grayson* and *J. C. Hesler,* for plaintiff in error.

*Anderson, Cann & Dunn, J. Ferris Cann,* and *John R. Fawcett,* contra.

BELL, Justice. John R. Fawcett, with other citizens and taxpayers of the City of Savannah, filed a suit in equity against the mayor and aldermen of the city, the marshal, and the city tax-assessors, to enjoin the defendants from enforcing tax executions issued against the plaintiffs and levied upon their property; to restrain the board of tax-assessors from continuing in the year 1937 and in future years the assessing of real property at different proportions or percentages of value from that applied to personal property; and for other relief. The defendants filed a general

demurrer, which the court overruled, and they excepted. The action was brought for the benefit of the plaintiffs and in behalf of such others as may be similarly situated and who shall desire to be made parties. The petition was filed in May, 1937, and it was alleged that there were about 1100 other owners of real estate whose property was then being advertised for sale under similar executions. The alleged grounds of complaint were that the board of tax-assessors for many years past, "to wit: 1932 to 1936, both inclusive," and including the year for which executions have been issued against petitioners' property, and also for the year 1937, "have habitually, intentionally, and systematically adopted the practice of assessing real property at from 60 per cent. to over 100 per cent. of its present actual fair market value; while at the same time they have allowed the owners of personal property to return such property at a much less rate of its present actual fair market value, varying from 33⅓ per cent. in the case of stocks of merchandise and to as low as 10 per cent. on that class of property known as intangibles. . . That said board of assessors have accepted, allowed, and assessed all personal property offered to be returned by its owners to be returned at such rates, and have advised the returns thereof at such percentages of its real market ad valorem value." The "petitioners' real property is assessed by said Mayor and Aldermen of the City of Savannah and its said assessors at approximately 100 per cent. of its present actual fair market value." The percentage at which the property was assessed "varied as to each piece of property," but "the lowest of such percentages was greater than the highest per cent. of value" assessed against personal property and intangibles. The plaintiffs alleged that such custom and systematic practice in the assessment of property for taxation constituted an unlawful discrimination between the various classes of taxable property, including the real estate of the plaintiffs, and is contrary to the provisions of the constitution of Georgia, declaring that "all taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax" (§ 2-5001), and that "all laws exempting property from taxation other than the property herein enumerated shall be void" (§ 2-5005) ; also that the practice as applied to the plaintiffs violates the due-process and equal-protection clauses of

the State and Federal constitutions. Code, §§ 1-815, 2-104, 2-103.

A section of the charter of the City of Savannah providing that the mayor and aldermen are authorized "to make such assessments and lay such taxes on the inhabitants of said city, and those who hold taxable property within the same, and those who transact or offer to transact business therein, as said corporate authorities may deem expedient for the safety, benefit, convenience, and advantage of said city, and may enforce the payment of such assessments and taxes in such manner as said mayor and aldermen may prescribe" (Code of 1863, § 4756), was assailed in the petition as being in violation of the last-mentioned clauses of the State and Federal constitutions, in that it does not provide for any notice or hearing. Stated ordinances were attacked for similar reasons, and also because they do "not provide for any appeal from any assessments except to the same board of assessors who have already assessed the property." For all of the reasons mentioned, the plaintiffs alleged that the assessments and the executions based thereon were absolutely void and "constitute a cloud upon the titles to said property and other properties of petitioners." The plaintiffs also alleged "that said levy upon the several lots of land and improvements is excessive and void in that defendants' advertisement covers several pieces of property owned by the same person, any one piece of which would sell for more than the amount of the execution against such person respectively, [and] because said lots and improvements are of values respectively which as shown by the assessed value placed by said city's board of tax-assessors is greatly in excess of the amount of the tax levy and execution under which the said marshal is now proceeding." The petition did not show the year for which the executions were issued, or the amount of any execution. It did not show which of the several lots, or whose lots, were of the values greatly in excess of the executions. If the plaintiffs or any of them are the owners, or have been the owners, of any personal property since 1932, the petition did not *expressly* disclose the fact. Paragraph 11 of the petition was as follows: "The discrimination made by the Mayor and Aldermen of the City of Savannah and said board of tax-assessors in not assessing all property within the territorial limits of said city at a uniform rate of their value makes it impossible for petitioners to know just what amount the true and just taxes

would be upon their real property, and it is therefore impossible for them to make a tender of the correct amount of such taxes. That when true, accurate, and legal assessments and returns of all property within said city subject to taxation have been made for the years specified and the taxes levied thereon, in accordance with law, petitioners will pay what is then determined to be his [their] just, correct, legal and equitable taxes." Nothing else on the subject of tender appears. It is stated in the briefs that in the City of Savannah the citizens do not return their property for taxation, but that the property is assessed by the board of tax-assessors. Ordinances copied in the petition may perhaps disclose the practice. No charter provision to that effect has been called to our attention.

■ The parties will be referred to according to their position in the court below. It is contended by the defendants that the court erred in overruling the general demurrer, for the following reasons: The plaintiffs did not tender any amount as taxes due to the city, nor did they exhaust their legal remedies before seeking relief in a court of equity. The plaintiffs are guilty of laches, and do not come into equity with clean hands. It is contended by the plaintiffs that in view of the unlawful discrimination against real estate the assessments and executions were void, and that in such case no tender is necessary. As to the pursuit of legal remedies, they insist that the charter provisions and ordinances of the City of Savannah as to assessing property for taxation are unconstitutional and void, because of their failure to provide for any notice or hearing; also that in such alleged case of discrimination as to values of different classes of property the hearing which is usually afforded to a taxpayer on the question of excessive valuation would not be applicable. They take issue with the defendants on the legal questions whether the petition shows upon its face that they have been guilty of laches or have failed to come into equity with clean hands. Finally, it is insisted that in some instances the levies made by the marshal were excessive, and that this fact alone should afford a cause of action. It is our opinion that the petition shows upon its face that the plaintiffs have been guilty of such laches as to bar their claim for injunction to restrain the tax sales for alleged discrimination, and also that the petition is fatally defective, as to this and other phases, for the want of a

tender. We are of the further opinion that the petition is too indefinite to state a cause of action based upon excessive levies by the city marshal. Since, in our judgment, a proper decision of these questions will dispose of the entire case, as now presented, adversely to the plaintiffs, no decision will be made upon other questions. It may not be amiss, however, to make some reference to the other questions before proceeding with those which we deem to be controlling.

The discriminatory practice as alleged in the petition is not defended by the city. The following authorities would appear to condemn it, and some of them will be found to discuss the remedy. Yakima Valley Bank v. Yakima County, 149 Wash. 552 (271 Pac. 820) ; Spokane & Eastern Trust Co. v. Spokane County, 70 Wash. 48 (126 Pac. 54, Ann. Cas. 1914B, 641) ; Coombes v. Coral Gables, 124 Fla. 374 (168 So. 524) ; Cummings v. Merchants National Bank of Toledo, 101 U. S. 153 (25 L. ed. 903) ; Stanley v. Albany County Board of Supervisors, 121 U. S. 535 (7 Sup. Ct. 1234, 30 L. ed 1000). In support of their contention that the provision of the charter and the ordinances of the City of Savannah relating to the assessing of property for taxation are unconstitutional, the plaintiffs have cited the following cases: *Shippen Brothers Lumber Co.* v. *Elliott,* 134 *Ga.* 699 (3) (68 S. E. 509) ; *Swinson* v. *Dublin,* 178 *Ga.* 323 (2) (173 S. E. 93). These decisions may or may not answer the question. On the general subject, see *Wadley Southern Railway Co.* v. *Slate,* 137 *Ga.* 497 (2) (73 S. E. 741) ; *City of Sandersville* v. *Bell,* 146 *Ga.* 737 (2) (92 S. E. 218) ; *City of Macon* v. *Anderson,* 155 *Ga.* 607 (3) (117 S. E. 753) ; *City of Valdosta* v. *Harris,* 156 *Ga.* 490 (2-a) (119 S. E. 625) ; *McGregor* v. *Hogan,* 153 *Ga.* 473 (112 S. E. 471) ; *Simmons* v. *Newton,* 178 *Ga.* 806 (174 S. E. 703) ; McGregor v. Hogan, 263 U. S. 234 (44 Sup. Ct. 50, 68 L. ed. 282) ; Pittsburgh &c. R. Co. v. Bachus, 154 U. S. 421 (14 Sup. Ct. 1114, 38 L. ed. 1031) ; Farncomb v. Denver, 252 U. S. 7 (40 Sup. Ct. 271, 64 L. ed. 424). On the question of clean hands, while the plaintiffs' ownership of personal property and their participation in the alleged scheme do not affirmatively appear from the petition, fatal presumptions against the plaintiffs might perhaps arise in regard to these matters, in view of the silence of the petition in reference thereto. Be that as it may, and without intending an intimation

on the subject, we return to the questions upon which, according to our view, the case should be determined.

With reference to the relief sought, the petition may be subdivided as follows: (1) It seeks to enjoin the proposed tax sales, for two reasons: (a) discrimination in assessments, and (b) excessive levies by the city marshal. (2) It seeks to end by injunction the alleged discriminatory practice. These several phases will be dealt with in the following discussion, though not in the exact order stated.

We will consider first the question of laches. The plaintiffs are citizens and residents of the City of Savannah. The petition was filed in May, 1937. The plaintiffs alleged that "for many years past, to wit: 1932 to 1936, both inclusive," and also for the year 1937, the city tax-assessors have intentionally, habitually, and systematically adopted the practice of assessing real property at from sixty to one hundred per cent. of its fair market value; while at the same time they have allowed owners of personal property to return this kind of property at a lesser proportion of its value, varying from 33⅓ per cent. in case of stocks of merchandise to as low as 10 per cent. on the class of property known as intangibles. In the absence of allegations to the contrary, it is fair to assume that the plaintiffs were thoroughly aware of this practice during all of these years, and yet neither did nor attempted to do anything about it. *Wolfe* v. *Georgia Railway & Electric Co.,* 124 *Ga.* 693 (53 S. E. 239); *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867). In the meantime they have enjoyed the benefits of the municipal government as provided from funds supplied by the generality of the taxpayers. The petition alleged that about 1100 other taxpayers are in a situation similar to that of the plaintiffs, but these would compose only a small percentage of the property owners in a city like Savannah. The plaintiffs were not remediless in the meantime. They could have protested in some way, and could have petitioned the authorities to abandon the illegal practice. Code, § 2-124. Whether or not a suit instituted *solely* for the purpose of restraining a continuation of the discriminatory practice might have constituted an available remedy (cf. *Atlanta Title & Trust Co.* v. *Tidwell,* 173 *Ga.* 499 (3), 160 S. E. 620, 8 A. L. R. 735), it would have been as good in 1932 as in 1937. If injunction was not a remedy, it would seem to follow that man-

damus would have been. *Ford* v. *Cartersville*, 84 *Ga.* 213 (10 S. E. 732); *Tarver* v. *Dalton*, 134 *Ga.* 462 (3) (67 S. E. 929, 29 L. R. A. (N. S.) 183, 20 Ann. Cas. 281); *Richmond County* v. *Steed*, 150 *Ga.* 229, 234 (103 S. E. 253). By at least one or the other of these remedies the alleged illegal system could have been corrected in a judicial proceeding. "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." Code, § 3-105. Accordingly, the plaintiffs did not have to wait from the year 1932 until their property was levied on and about to be sold in the year 1937. They knew all the time that the city was constantly becoming more deeply involved with other taxpayers; and if they are now permitted to escape from taxation for these years, they will gain an unconscionable advantage over their fellow citizens. Giving full credit to their disavowal of any such intention, we are able to envisage no other practical result, if their contentions are sustained in the instant case. While the question of tender is a different matter, the allegations upon that subject illustrate the inequitable position which the plaintiffs have assumed. The petition alleged that "when true, accurate, and legal assessments and returns of all property within said city subject to taxation have been made for the years specified and the taxes levied thereon, in accordance with law, petitioners will pay what is then determined to be their just, correct, legal and equitable taxes." In other words, in the face of a continuing and known unlawful condition, the plaintiffs have remained inactive until what they have finally concluded to demand is practically impossible, it being declared in effect that they do not propose to pay any taxes until accurate and legal assessments of all property within the city subject to taxation have been made "for the years specified," namely, 1932 to 1937, inclusive. The city could not without the utmost difficulty, if at all, comply with this condition, relating as it does to previous years as far back as 1932. Presumptively the transactions for these years have, in the main, been closed, and an attempt by the city to reopen them as to every property owner would naturally result in the greatest confusion, and a multiplicity of actions would likely follow.

On the question of laches, it is immaterial that the assessments made against the plaintiffs' property may be unconstitutional and

void because of the discrimination. In support of this proposition as well as to sustain the general conclusion that the plaintiffs are barred by laches from any right to enjoin the tax sales, it would seem sufficient to refer only to the case of *Bass* v. *Milledgeville*, 180 *Ga.* 156 (178 S. E. 529), where the principles are fully discussed and authorities cited; but see also, in this connection, *Equitable Bldg. & Loan Asso.* v. *Brady*, 171 *Ga.* 576 (2) (156 S. E. 222); *Eller* v. *McMillan*, 174 *Ga.* 729 (2), 733 (163 S. E. 910); Cleveland v. Spartanburg, 185 S. C. 373 (194 S. E. 128); Pepper *v.* Philadelphia, 114 Pa. 96 (6 Atl. 899); Draughon *v.* Heitman, 124 Fla. 24 (168 So. 838); 61 C. J. 1091, §§ 1441, 1442. This conclusion as to laches is intended to apply only to the effort to enjoin the tax sales because of alleged discrimination.

■ It is not contended that the City of Savannah is without any authority whatever to assess and collect taxes from its citizens; nor, upon a proper construction of the petition, can it be said to present any contention that the values placed upon the plaintiffs' property are within themselves excessive. The real basis of the complaint is that the plaintiffs as owners of real estate are about to suffer from discrimination as between the different classes of property. What they are seeking to obtain is parity, and in this view they should at least have tendered amounts equal to the taxes which would have been due upon their real estate if it had been assessed at the lowest proportion of value which the board of assessors applied to personalty, and which according to the petition was ten per cent. These amounts would have been readily ascertainable. He who would have equity must do equity, and under this rule the plaintiffs alleged no sufficient excuse for their failure to make a tender on the basis indicated. *City of Waycross* v. *Cowart*, 164 *Ga.* 721 (3) (139 S. E. 521); *Peoples Credit Clothing Co.* v. *Atlanta*, 173 *Ga.* 653 (160 S. E. 873); *Candler* v. *Gilbert*, 180 *Ga.* 679, 680 (180 S. E. 723); *Pierce Trading Co.* v. *Blackshear*, 182 *Ga.* 649 (186 S. E. 721); Peoples National Bank of Lynchburg *v.* Marye, 191 U. S. 272 (24 Sup. Ct. 68, 48 L. ed. 180). This ruling will apply to the petition, not only as it seeks an injunction to restrain enforcement of the tax executions, but also as it relates to a continuation of the alleged discriminatory practice. The two objectives of the petition are so interdependent that the plaintiffs are in duty bound to do equity in regard to both, under the facts of the case. Code, § 37-104.

■ The same rule as to tender, or an offer to do equity, will apply to the action as related to excessive levies by the city marshal. *Wilkinson* v. *Holton,* 119 *Ga.* 557 (46 S. E. 620); *Peoples Credit Clothing Co.* v. *Atlanta,* supra. Furthermore, the complaint in regard to excessive levies is too vague and uncertain to withstand a general demurrer. Under a proper construction of the petition, it does not allege that all of the levies were excessive. The suit was instituted by about thirty citizens. None of them would be interested in restraining a sale of the others' property solely upon the ground of excessive levy by the city marshal. *Picquet* v. *Augusta,* 64 *Ga.* 254. The petition does not show upon whose property the *excessive* levies were made, and thus fails to disclose any proper complainant as to this ground. Again, no particular tract or parcel of land is indicated, nor is any execution or levy identified. It follows that as to this branch of the case the petition is too general and indefinite to form the basis for a decree. *Nance* v. *Daniel,* 183 *Ga.* 538 (189 S. E. 21). For the reasons stated, the court erred in not sustaining the general demurrer and dismissing the petition.

*Judgment reversed. All the Justices concur.*