Simmons *vs.* Byrd *et al.*

JAMES P. SIMMONS, plaintiff in error, *vs.* DANIEL M. BYRD *et al.*, defendants in error.

1. A judgment was obtained against a party who died in the latter part of 1863, testate, authorizing his executors to sell, either publicly or privately, certain of his slaves.  The executors qualified in December, 1863.  The judgment creditor, soon after the qualification of the execu-

tors, urged them to sell the negroes, on account of the near approach of the Federal army. The executors refused, and hired out most of the negroes for 1864, but on the 6th of July, 1864, at the solicitation of the creditors, plaintiff included, defendants consented that they might be levied on and sold. A levy was made the next day on all the slaves, and they were taken in custody by the sheriff. In a few days, on account of threatened raids by the Federal forces, the negroes, by consent of the parties, were sent off by a mutual agent. In a short time they returned, but nothing further appears to have been done with them by the sheriff or either of the parties:

*Held,* That the executors are not liable to such levying creditor for not having sold the slaves prior to the levy, it having been only seven months from the time of their qualification as executors, and after the levy was made, the negroes were in the custody of the law at the in·stance of the creditor.

2. Where an executor advances a support to the family of the deceased, although not specifically set apart by appraisers, he is entitled to be credited with it in accounting with the creditors and heirs, the burden being on him to show that it was a proper and necessary amount.

3. A judgment creditor of a testator cannot recover in an action on the case against an executor for not selling certain articles of personal property, when the creditor had it in his power to levy on the same, more especially if it be not shown that they were lost to the estate by not being sold by the executor, and the executor points them out to the creditor and directs him to levy.

Administrators and executors. Distribution. Execution. Levy. Before Judge RICE. Gwinnett Superior Court. March Term, 1873.

This case was tried before Judge Davis, but the motion for a new trial was heard by Judge Rice, he having in the meantime, come upon the bench.

James P. Simmons brought case against Daniel M. Byrd and Amanda H. Cates for $10,000 00, damages alleged to have been sustained under the following circumstances: On December 7th, 1863, plaintiff was the owner of judgments against one Lodawick M. Cates, aggregating in amount to $6,124 58; Cates having died, the defendants, as executor and executrix of his will, took possession of his estate, the same being of the value of $30,000 00, and more than sufficient to pay all debts and liabilities. The defendants have

Simmons *vs.* Byrd *et al.*

wasted the assets until there is not now more than sufficient to pay the liens of a higher dignity than those of your petitioner.

The defendants pleaded the general issue, and further, that the estate of Cates consisted almost entirely of negroes, which it was impossible to sell during the late war, except for Confederate money, which the plaintiff refused to take upon his claims. The property, besides the negroes, was not sufficient for the year's support of the family. The Federal forces were making raids through the country, which rendered negro property of little value. The plaintiff levied his executions upon the negroes, and they were placed in jail for safe-keeping, but they were subsequently, by his consent and direction, taken out of the county in order to prevent their capture by raiding parties, where they remained until slavery ceased to exist.

The facts disclosed by the proof were substantially as follows:

Lodawick M. Cates died in September, 1863, leaving a will which authorized his executor and executrix to sell, either publicly or privately, certain slaves. The defendants qualified as executor and executrix on December 7th, 1863, and assumed control of the estate. The plaintiff urged the defendants to sell the negroes, on account of the near approach of the Federal army. This they refused to do, and hired out most of the negroes for the year 1864; but on July 6th, 1864, at the solicitation of the creditors of the estate, the plaintiff included, consented that they might be levied on and sold. They were accordingly levied on under one of the plaintiff's executions and went into the custody of the sheriff. Shortly thereafter, on account of the approach of the Federal forces, by consent of all parties interested, the negroes were sent out of the county. Upon their return, nothing further seems to have been done by the sheriff, the plaintiff or the defendants.

The defendant, Byrd, used the hire of the negroes, with about $500 00 of his own money, for the support of the family of testator. There was no evidence of the usual year's support having been set apart by appraisers.

Much additional evidence was introduced which is thought to be unnecessary to an understanding of the decision, and is, therefore, omitted.

The jury returned a verdict for the defendants. The plaintiff moved for a new trial, because the verdict was contrary to the law and the evidence.

JAMES P. SIMMONS; WINN & SIMMONS; HILLYER & BROTHER, for plaintiff in error.

CLARK & PACE; J. N. GLENN; N. L. HUTCHINS, for defendants.

TRIPPE, Judge.

1. It is sought in this case to hold the executor liable to a judgment creditor of his testator, for not selling the slaves of the estate within less than seven months after his qualification as executor. The special reason assigned as making it a guilty default on the part of the executor in not so selling is, that the negroes were in danger of being lost to the estate and to the creditors, on account of the near approach of the Federal army to the section where the negroes were. We do not think this shows such negligence by the executor as to make him responsible for the loss of the slaves by emancipation, which occurred about nine or ten months thereafter. The slaves were not captured or taken by the Federal army. They were levied on by general consent, plaintiff included, and at his instance. By general consent the negroes were sent off to prevent capture. When so sent off they were under levy, in the custody of the law, and it seems that afterwards all parties were quiet; nothing done under the levy; and the whole matter was closed by the emancipation of the slaves in some six or eight months after their return. It would be a cruel hardship on the executor to make him responsible for not selling the slaves in seven months after he took letters. He was qualified as executor in the latter part of 1863. He had at once to decide whether he would hire them for the next

year or sell them. He decided to hire them, and did hire a large portion, working some on the farm belonging to the estate. This was not such an abuse of his power or discretion as to make him responsible for their loss, because, within four months after the expiration of the next year, the slaves were lost by the act of the government. After the levy in July, 1864, and that, too, by consent of the executor, and by the act or direction of the plaintiff, the negroes were in the custody of the law, for it seems that the levy was never dismissed.

2. It is also claimed that the widow and family of the testator consumed a portion of the estate furnished them by the executor, and that twelve months' support and maintenance had not been assigned them by appraisers, so as to authorize such use of it. We do not think that it is absolutely necessary that there should be a formal assignment made of a twelve months' support and maintenance to the family of a deceased person, to entitle the representative of the estate to a credit of what he may have allowed or given them for such support. It would, of course, be incumbent on him to show that what he had so furnished was reasonable and proper. He takes the hazard ; but if he only furnish what the law would compel him to furnish, he is to be protected. We think this is not only consistent with the cases of *Blassingame et al., vs. Rose et al.*, 34 *Georgia*, 418, and *Wells vs. Wilder*, 36 *Georgia*, 194, but is almost necessarily the result of those decisions.

3. There were a few articles of property not sold or consumed by the family, and which were left with the widow, who was also executrix. The executor pointed them out to the creditor and directed him to levy. The creditor did not do so, and claims in this action, that the executor is liable therefor. The most there is in this point seems to be, that there must have been a dispute between the creditor and executor as to who should perform the ungracious task, so to call it, of selling, or having sold, the remnant of a once valuable estate. The creditor would not levy on it, and seeks, in an action on the case, to hold the executor responsible because he did not. It does not appear that the items of property have been lost to

the estate, or as yet lost to the creditor, on account of the executor's not selling. There is no return on the plaintiff's execution of *nulla bona*, and how can he expect to recover for a *devastavit* by the executor without proof of the waste? We do not think the evidence on this point shows that the executor is responsible.

Judgment affirmed.