20225. GAILEY *et al. v.* COOK, ordinary, for use, etc.

DECIDED JULY 15, 1930.

*Underwood, Haas & Gambrell,* for plaintiffs in error.
*A. S. Thurman, J. H. McCalla,* contra.

LUKE, J. E. F. Cook, as ordinary of Rockdale county, brought an action for the use of the Metropolitan Life Insurance Company, as creditor of the estate of W. T. Stanton, and numerous heirs at law of Stanton, against Charles Kennon Gailey, the duly appointed administrator of the estate, and the Maryland Casualty Company as surety on the administrator's bond, to recover $2,660.98, alleged to have been in the administrator's hands on December 18, 1925, "after payment of cost, expenses, and claims having priority." It was also alleged in the petition that at the time of Stanton's death he was indebted to the Metropolitan Life Insurance Company in the sum of $2,000, with interest "on a certain note" payable to the Atlanta Trust Company, and duly transferred and assigned to said life insurance company during the lifetime of Stanton.

On January 22, 1929, a jury found for the plaintiff, and on the verdict the court on the same day entered a judgment that the plaintiffs recover of the defendants, Charles K. Gailey, as administrator of the estate of W. T. Stanton, deceased, and the Maryland Casualty Company, as surety, the principal sum of $2,660.98, the further sum of $104.89, interest to date, with future interest on the sum of $484.17 at seven per cent. The exception is to the judgment overruling the defendants' motion for a new trial.

Briefly stated, Gailey's defense set up in his answer was that under the authority of an order of the court of ordinary, the land described in the loan deed held by the Metropolitan Life Insurance Company was sold by him at public outcry to J. W. Burns for $3,000, subject to the loan deed; that the said $3,000 was deposited in the First National Bank of Conyers to defendant's account "as administrator of the estate of W. T. Stanton," as was required by the Maryland Casualty Company; that as soon as he received said money he offered to pay the amount due the insurance company

under its loan deed, but was advised by its agent, the Atlanta Trust Company, that the papers were in New York and that the debt could be paid off in five days; that he made three or four efforts to pay off the debt, but that each time he was advised by the Atlanta Trust Company that the papers had not arrived; and that he was never advised of the arrival of the papers until after said bank had closed its doors and gone into the hands of a receiver.

The material parts of the answer of the Maryland Casualty Company are substantially as follows: "Said balance of $2,660.98 standing in the name of the administrator on December 18, 1925, in the First National Bank of Conyers, was reduced by legal payments allowed by law to the sum of $2,642.30, which was the amount standing to the credit of the administrator on April 17, 1925, the time of the failure and closing of said bank." Said indebtedness of W. T. Stanton to the Metropolitan Life Insurance Company was secured by a first loan deed on described real estate, and, under the authority of an order of the court of ordinary, said land was sold to J. W. Burns on the first Tuesday in February, 1925, for $1,000. Immediately after the sale said Gailey and said Burns "entered into a private agreement whereby the said Burns agreed to pay to Gailey the $2,000 indebtedness due the Metropolitan Life Insurance Company, and Gailey agreed to pay said sum to the agent of said company and secure the canceled loan deed; "that Gailey made a prompt tender of the full amount due on said loan deed to said Life Insurance Company at the office of its agent, the Atlanta Trust Company, but said agent advised him that it would be necessary to send to New York for the papers, and that if Gailey would return to Atlanta within five days the loan could be paid off; that at the expiration of five days Gailey made a similar tender, and was again told by Atlanta Trust Company that the papers had not arrived; that at the expiration of another week Gailey made another tender of said money, and was again advised that the papers had not come; that Gailey then advised said agent that he would deposit said sum in the First National Bank of Conyers, where it would remain intact until he was advised that the papers had arrived and were ready to be delivered; and that Gailey heard nothing further from said insurance company or its agent, and said money remained in said bank intact "until the 17th day of April, 1925, when said bank closed its doors and went into the

hands of a receiver;" that of said $3,000 paid Gailey by Burns only $1,000 became assets of the estate of W. T. Stanton; and that "at the time said funds were deposited in the First National Bank of Conyers, and at all times thereafter up to the actual closing of the bank, said bank was of good standing and repute, and in going condition, and the said Gailey exercised due care and caution in depositing funds of the estate in said bank, said funds having been deposited in his name as administrator of the estate of W. T. Stanton, deceased;" that said administrator's act in depositing said funds in said bank was well known to plaintiffs, and was acquiesced in by them during all the time said funds remained on deposit therein, and said administrator has been guilty of no breaches of trust for which this defendant is liable on its bond.

By an amendment to its original answer, allowed and filed January 21, 1929, the Maryland Casualty Company further pleaded: "If said $2,660.98 on deposit in First National Bank of Conyers in March, 1925, were assets of the Stanton estate, at that time $2,-176.81 of the funds was claimed under a lien by Metropolitan Life Insurance Company, leaving only $484.17 at that time for other creditors and the heirs; that the administrator, since March, 1925, has properly paid to creditors as follows: $10.76 for bond, $100 for attorney, and $85 for doctor,—making $205.34, and leaving $278.83 which ought to go to the heirs and next of kin. Maryland Casualty Company shows that since the $2,660.98 was deposited in First National Bank of Conyers, the administrator has received a 30 per cent. liquidating dividend on same, amounting to $798.29, from which he paid the $205.34 to creditors, leaving in the hands of the administrator at present a balance of $592.95, which amount the administrator is willing to pay proper parties. Maryland Casualty Company shows that the administrator exercised due care and caution to preserve and administer the assets, and would have paid the $2,176.81 to the Metropolitan Life Insurance Company but for its delay and refusal to accept same, and its acquiescence in leaving the funds in the First National Bank of Conyers, thus causing it to be caught; and it is shown that judgment in this case should not be for more than $592.95 on hand, $278.83 of which, if granted, ought to be reserved for the heirs and next of kin."

On January 21, 1929, the judge passed an order making T. H. Marston, ordinary, plaintiff in the place of E. F. Cook, ordinary, who had died.

The first and fourteenth special grounds of the motion for a new trial are mere elaborations of the general grounds, and require no separate consideration. The case having proceeded to a verdict and judgment, special ground numbered 2 need not be considered separately from the general grounds. *Atlantic Coast Line R. Co.* v. *Blalock,* 8 *Ga. App.* 44 (2) (68 S. E. 743). Special ground numbered 3 discloses no reversible error. The criticism of the charge set out in special ground 4, that "it authorized the jury to find against the defendants even though the administrator's want of care did not cause the loss in the bank, or any other loss," is without merit. In view of other parts of the charge, there is no reversible error in the excerpt set out in ground 5. Grounds 6 and 7 disclose no reason for reversing the judgment. In ground 8 complaint is made of this charge: "The degree of care and foresight which it is necessary to use in any given case must always be in proportion to the probability and improbability, nature and magnitude of the loss or injury that will be likely to result from the occurrence which is to be expected and guarded against." It is urged that "said charge is erroneous and prejudicial in that it sets forth terms contrary to law regarding the method of ascertaining due care, and permits the jury to consider the nature and magnitude of a prospective loss or injury." The court had previously instructed the jury that the law required the administrator to exercise ordinary care and diligence in preserving the estate entrusted to him, such care as a prudent man would exercise under similar circumstances and conditions. We think it would have been better had the court gone no further in the charge upon this subject. However, we do not think that the part of the charge criticised, which is in the language of Chief Justice Bleckley (*Central R. &c. Co.* v. *Ryles,* 84 *Ga.* 420, 430, 11 S. E. 499), is ground for a new trial. Ground 49 is too incomplete for consideration, and, if considered, discloses no reversible error. Ground 10, complaining of the court's instructions as to the form of the verdict, shows no error. Ground 11 is based upon "newly discovered evidence." This ground can not be considered, for the reason that the affidavits of client and counsel are in effect that they could not have discovered the evidence set out in the ground "by the exercise of ordinary diligence," there being no allegation of fact to take such statement out of the realm of conclusion. See *Trammell* v. *Shirley,* 38 *Ga. App.* 710 (2), 727 (145 S. E. 486).

Grounds 12 and 13, complaining of the court's refusal to give certain requested instructions to the jury, are defective in that they fail to state that the requests were presented to the judge before the jury retired to consider its verdict. Each of them contains only this language: "Defendants move for a new trial on the ground that the court, after having been *duly requested* in writing to give the following charge," set out in the ground, "erroneously refused to give the same." Similar statements have been held to be mere conclusions as to the time when the charge was presented. See *Stewart* v. *Avery*, 38 *Ga. App.* 431, 434 (144 S. E. 218), and cit.

After a careful examination of the brief of evidence in this case, we have reached the conclusion that there was evidence authorizing the jury to conclude that the administrator deposited the estate's money in a bank which he, in the exercise of ordinary diligence, should have known was not a safe depository. Therefore we do not think that there is merit in the general grounds of the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*