FIRST NATIONAL BANK & TRUST CO. *v.* HIRSCHFELD.

No. 9698.  FEBRUARY 24, 1934.  REHEARING DENIED MARCH 3, 1934.

*Jones, Johnston, Russell & Sparks,* for plaintiff in error.
*Park & Strozier,* contra.

BELL, J.  L. E. Hirschfeld filed a suit in equity against J. J.
Barnes and the First National Bank & Trust Company in Macon.

A general demurrer interposed by the trust company was overruled, and the company excepted. The petition alleged: The Continental Trust Company and J. J. Barnes were the executors of the will of Mrs. Mattie Barnés. The Continental Trust Company was later consolidated with the Macon National Bank under the name of the First National Bank & Trust Company in Macon, which company in virtue of the consolidation succeeded to all liabilities existing against the Continental Trust Company. Barnes being interested as a legatee in the estate of Mrs. Mattie Barnes assigned his interest to Hirschfeld to secure a debt. The written assignment directed the executors, after selling the property of the estate, to pay to Hirschfeld the amount of his debt and to charge the same against the interest of Barnes in the estate. Barnes as executor accepted the assignment. The trust company refused to accept it, but acknowledged receipt of it, a copy of the same having been sent to it by registered mail by the attorney for Hirschfeld. Thereafter the executors sold the property of the estate, and the share of Barnes as a legatee exceeded the amount due by him to Hirschfeld. The executors, however, paid the money to Barnes, entirely disregarding the assignment. Following this they wound up the estate and in the course provided by law obtained a judgment in the court of ordinary discharging them as executors. The debt due individually by Barnes to Hirschfeld has never been paid. The suit was brought as a suit in equity against Barnes and the National Bank as successor to the Continental Trust Company to enforce the assignment and to recover the amount due by Barnes to Hirschfeld. This debt was evidenced by a note for the sum of $1308. The whole theory of the plaintiff's case was summed up in the following allegation: "Petitioner shows that the interest of the said J. J. Barnes in the estate of the said Mrs. Mattie C. Barnes and in the property belonging to her estate described in the transfer and conveyance having been transferred and assigned to petitioner and the executors having been notified of such transfer and assignment, the said executors were in duty bound to pay over to petitioner a sufficient amount out of the moneys realized from the sale of the properties of the estate which by the terms of the will belonged to the said J. J. Barnes to satisfy the principal and interest of the note aforesaid, and having failed so to do became and are liable to petitioner for the said sum of $1308 the principal of said note, with interest thereon in accordance with the terms of said note."

■ The Civil Code (1910), § 4089 is as follows: "An administrator who has fully discharged all his duties may petition the ordinary to pass an order discharging him from his trust; upon such petition a citation shall issue, requiring all persons concerned to show cause against the granting of the discharge. Such citation shall be published in the gazette once a week for four weeks." In § 4090 it is provided that: "Upon the hearing, the ordinary shall examine closely into the condition of the estate, and the conduct of the administrator; and if he shall be satisfied that he has faithfully and honestly discharged the trust and confidence reposed in him, the prayer of the petitioner shall be granted, and the administrator released from all liability as such. . ." These statutes are applicable to executors. § 3892. It is not contended that the discharge of these executors was obtained by fraud, and there is no effort to avoid the same upon any ground. A judgment of a court of ordinary discharging an executor will relieve him from all liability on account of his administration, unless it be impeached or set aside in some appropriate manner. *Jacobs* v. *Pou,* 18 *Ga.* 346; *Summerlin* v. *Floyd,* 124 *Ga.* 980 (53 S. E. 452); *Wicker* v. *Howard,* 126 *Ga.* 119 (54 S. E. 821). Under these authorities the present plaintiff is concluded by the judgment of the court of ordinary discharging the executors, unless it appears that the defendants have violated some duty to the plaintiff apart from their relation as executors and thus are liable as individuals.

■ Counsel for the defendant in error contend that the suit is not against the defendants in their representative capacity, but is a proceeding to subject them to individual liability for a wrong for which they should be held responsible in equity. It is insisted that the defendants had actual knowledge of the assignment and of the equitable interest conveyed thereby, and that notwithstanding this knowledge they wholly disregarded the assignment and settled with the legatee. The decision by this court in *Graham* v. *Southern Railway Co.,* 173 *Ga.* 573 (3) (161 S. E. 125, 80 A. L. R. 407), is cited and relied on as authority for the proposition that these facts constituted a cause of action. In that case it was held: "An equitable assignment of a part of a debt vests an equitable interest in the assignee to such part, and after notice to the debtor he is bound to apply the fund according to the terms of the assignment, regardless of the wishes of the debtor. A contrary doctrine is in-

consistent with the equitable title of the partial assignee to the part of the debt assigned to him. The payment by the debtor to his creditor of the whole of his debt, after notice of the partial assignment, and in disregard of the assignment, renders him liable to the partial assignee in such assignment." Counsel for plaintiff in error has requested that this decision be reviewed and overruled. We will deny this request without expressing at this time any approval or disapproval of the decision referred to; and the same statement will apply to the decision in *United Engineers &c. Inc.* v. *Fiat Metal Co.,* 175 *Ga.* 509 (165 S. E. 609), in which the *Graham* case was followed. We do not think the ruling in either of these cases can be justly applied to the facts of the present case; and in this view it is unnecessary to consider the question of whether these cases or either of them should be overruled.

The statements just made will indicate that we do not agree with counsel for the defendant in error, plaintiff in the court below, that the petition stated a cause of action. Under the facts alleged in the petition, the defendants never could have had any duty in regard to the assignment, except for their relation to the estate as executors. If they owed any duty to the plaintiff such duty necessarily arose from their obligation as executors, and their discharge by the court of ordinary is an adjudication that all duties and liabilities which attached to them as legal representatives were fully satisfied. In view of the judgment of dismissal, we need not actually decide whether the defendants did in fact owe to the plaintiff any duty with respect to the assignment; because, even if it be true that such an obligation did exist, any right of the plaintiff to enforce the same should have been exercised before the granting of the discharge.

While it is claimed by counsel for the plaintiff that the defendants committed a wrong as individuals, it is doubtful if the petition should be construed as presenting this theory, the allegation being that "the said executors were in duty bound to pay over to petitioner a sufficient amount" to satisfy the debt. But even if the petition be considered as seeking a recovery for an individual wrong, it fails to show that any such wrong was ever committed.

"The rule that an executor or administrator is liable individually, and not in his representative capacity, for injury to third parties by his tortious acts, is well established." *Anderson* v. *Foster,* 105

*Ga.* 563, 566 (32 S. E. 373). "The estate of a testator is not liable for tortious acts of the executor committed in the administration of the estate, when no pecuniary advantage resulted to the estate by reason of such tortious acts." *Carr* v. *Tate,* 107 *Ga.* 237 (33 S. E. 47). Also, in *Bank of Newton County* v. *American Bonding Co.,* 141 *Ga.* 326 (80 S. E. 1033, 50 L. R. A. (N. S.) 1089), it was said: "If goods or money belonging to another person be amongst the goods of the deceased, and they come altogether into the hands of the administrator, the goods or money of such other person are not assets in the hands of the administrator. *Cooper* v. *White,* 19 *Ga.* 554. A fortiori, money wrongfully obtained by the administrator after the death of his intestate is not an asset of the decedent." These and like cases are cited as authority for the statement that the money paid by the executors to Barnes was never the money of the estate, but was Hirschfeld's money in virtue of his assignment, and that when the executors dealt with it as the money of any other person "they committed a tort on Hirschfeld for which, under all the authorities, they only as individuals are liable." We can not agree with this argument. In the cases relied on, the property or money of another was in the possession of the intestate at the time of his death or came into the hands of the legal representative after his appointment. In the instant case, the property dealt with by the executors was the property of the testatrix at the time of her death and it was the duty of the executors to administer it as a part of the estate. They did not obtain the property or the money arising therefrom otherwise than as executors. When they paid the money to Barnes they were acting as executors, and if they had paid it to Hirschfeld instead, they still would have been acting in that capacity. Consequently, their failure to pay the latter was not a failure as individuals but was a failure as executors. The distinction between the present case and those last cited above is clear. In those cases the property did not come into the hands of the legal representative as property of the estate, and therefore he was never authorized to deal with it as such. On the contrary, it was at all times the property of another; and when the legal representative assumed to make a disposition of it, he became personally responsible to the owner. The instant case is unlike the case of *Graham* v. *Southern Railway Co.,* supra, in that the railway company was sued in the same capacity in which it owed the debt or obligation. There was not as here a dual capacity.

In the present case, the defendants in dealing with the property or the money were acting strictly as executors, and if they violated any duty to the plaintiff it was a duty springing solely from that relation; whereas the plaintiff is seeking to hold them liable as individuals. So far as appears, Hirschfeld was never entitled to call upon the defendants as individuals to recognize his claim, but his remedy was to demand payment of them as executors. It appears from the petition that he pursued this course, but that he did not follow up his demand by objecting to the application for a discharge. The petition failed to show the violation of any duty owing to the plaintiff by the trust company as an individual; and it appearing that its liability, if any, as executor has been closed by the judgment of discharge, the petition did not state a cause of action against it. The court erred in not sustaining the general demurrer.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*

### ON MOTION FOR REHEARING.

BELL, J. It is insisted in the motion for rehearing that we overlooked the fact that in the case of *Anderson* v. *Foster,* 105 *Ga.* 563 (supra), s. c. 112 *Ga.* 270 (37 S. E. 426), the money wrongfully paid out by the executor constituted a part of the assets of the estate of the testator at the time of his death and was bequeathed to his children, one of whom was the plaintiff's intestate, and that we also failed to recognize the rulings made in that case to the effect that notwithstanding the money was a part of the assets of the testator, the executor could not be held liable in his representative capacity for such misapplication of funds. While the decision rendered in the present case may be subject to the criticism which is thus lodged against it, we do not think that a different result is required by the decisions in the *Foster* case. It appears from the facts of that case that the testator, A. G. Foster, owed no debts at the time of his death and that the money was a part of the property devised in the residuary clause of his will to be equally divided between all of his children. In these circumstances, the legacy was apparently considered by this court as having been impliedly assented to, with the result that the title to the money was vested in the legatees. *Webb* v. *Hicks,* 117 *Ga.* 335 (3), 342 (43 S. E. 738). If such was the case, the power of the executor over the money had terminated and he committed a conversion when he assumed to deal

with it in any manner except to pay the same to the legatees. *Day* v. *Cox,* 130 *Ga.* 537 (3) (61 S. E. 121) ; *Peck* v. *Watson,* 165 *Ga.* 853, 865 (142 S. E. 450, 57 A. L. R. 560). The duty of the executor "begins and ends with the collection of the assets of the estate, and paying the debts and legacies." *Printup* v. *Trammel,* 25 *Ga.* 240. See also *Cozart* v. *Mobley,* 43 *Ga. App.* 630 (159 S. E. 749).

Furthermore, the executor who was sued in the *Foster* case had never been discharged, and it was not held that a valid judgment dismissing him as executor would not have barred the action against him.

The fact that the executor applied the money to a debt for which he was personally liable may also have had some bearing upon the case. It was held that *the estate* of the intestate was not liable to the plaintiff. Similarly, it might be said in the instant case that the estate of the testator could not have been held liable for the alleged wrong of the executors; but it does not follow that the breach of duty complained of did not arise out of the office of executor, or that a discharge by the court of ordinary would not operate as a shield against a suit upon such claim.

In the decision as delivered in the present case it was said that "even if the petition should be considered as seeking a recovery for an individual wrong, it fails to show that any such wrong was ever committed." We should have said that the petition fails to show the commission of any wrong not connected with or growing out of the office of executor.                    *Rehearing denied.*