30797. STANTON *et al.* v. GAILEY, administrator, *et al.*

293

Decided April 3, 1945.

*Charles W. Anderson, Leonard Pennisi,* for plaintiffs.

*J. H. McCalla, Haas, Lyons & Hurl,* for defendants.

Sutton, P. J. On July 31, 1943, the heirs at law of W. T. Stanton, deceased, filed suit against Chas. K. Gailey as administrator of the estate of W. T. Stanton, as principal, and Maryland Casualty Company, as surety on his bond, seeking the recovery of $2775.23, together with interest from April 1, 1925. The amount sued for consisted of two items; one for $2660.98, which it is alleged was money of the estate deposited by the administrator in the First National Bank of Conyers, of which he was president, and which became insolvent shortly thereafter; the other for $124.25, which it is alleged was wrongfully paid out by the administrator to the widow of the deceased as living expenses, without an order of court, and before a year's support was set apart to her. By amendment the plaintiff alleged: "That said appraisement and inventory and the first annual return of the administrator defendant, Chas. K. Gailey, by mistake, oversight, or by fraudulent design and intent, omitted the listing and accounting for the following property of which the late deceased W. T. Stanton died seized and possessed and which came into the hands of said administrator and was sold by him and for which he did not, but should be required, to account and pay over the proceeds to the heirs and others interested lawfully in said estate, to wit: (1) 5 shares of gin stock in the ————— gin company, value $125; (2) 14 bales of cotton produced with other crops on the farm of the deceased during the year 1924, value, $700 net." The petition fur-

ther alleged that the petitioners have only recently ascertained all of the facts, for the reason that at all times when inquiry was made of the administrator he told them that the estate was encumbered with debt; that there would be nothing distributed to them, and concealed from them the true condition of the estate; and the petition as further amended alleged that about March 1, 1924 [1925?], and about April 10, 1925, Mrs. Robbie Sharp, one of the petitioners, inquired of the administrator about the payment of a bill to her sister, Mrs. Nona Rice, for services rendered in nursing the decedent during his last illness, and the administrator told her that there were no funds to pay any claim against the estate, and that none had been paid to date, which statement was known to be false and untrue by the administrator, but that petitioners were not aware that he was making a misstatement. The defendants denied the substantial allegations of the petition and set up two defenses: (1) res judicata; and (2) the discharge of the administrator and his surety by the court of ordinary.

On the trial of the case, Walter Stanton, one of the plaintiffs, testified, as to the $700 item of cotton rent and produce the farm yielded in 1924, that, "There was a crop made on this farm during the year 1924 . . 14 bales of cotton were made . . I lived in my father's home during the year 1924. I did all the supervising of the farm . . I couldn't say what cotton was worth that year; it would be guessing; I couldn't say positive. . . These negroes cleared something over $500 on their part. . . They used five tons of fertilizer at about $22 per ton; they used two tons of nitrate of soda costing $40. . . I gave the negroes' account to Mr. Gailey, and I sold the cotton and turned the cotton receipts over to Mr. Gailey, and Mr. Gailey would pay me the moneys that I furnished these negroes for the fertilizer and general expenses of the farm. . . I could not tell you how much I turned over for cotton money. . . This cotton was sold before the sales of the property. We had two sales; the first was sold in December, I think. . . My father had 5 shares of gin stock. It was sold to Mr. Will J. Cowan. . . The gin stock brought $125 for the whole thing. . . I was under bond at that time and I asked Mr. Gailey to give me a receipt, but he was away. . . You ask me whether I told the other heirs how much cotton I made . . I told the heirs I turned it over to Mr. Gailey . .

I sold the cotton myself and turned the money over to Mr. Gailey . . Mr. Gailey gave me back the expenses and the rest he put in the bank. . . These negroes worked on shares—half. Father furnished the stock and feed and they paid for half the fertilizer and they got half of what was made. . . I had a hog that Judge Cook said to sell. He wrote me a note to kill it and bring the money to my father's wife—that was on her support."

With reference to the allegations of fraud practiced by the administrator in the failure to pay out the remaining funds in his hands, Mrs. Robbie Stanton Sharp, one of the petitioners, testified: "I know when the sale took place. . . After the sale I later saw Mr. Gailey . . I went to him about paying my sister, Mrs. [Nona] Rice some money . . and asked him about paying some money to her for she nursed my father. . . I don't know exactly how long that was after this sale, a couple of weeks, maybe six or eight, maybe before. The bank failed sometime after then. . . He [Gailey] said, 'Well, I will as soon as I can wind things up and get it straightened out.' I told him her bill should come before the doctors' bill. . . I asked him had anyone been paid when I told him that her nursing bill should come ahead of the doctors' and drug bill. He told me no one had been paid. . . I asked him if anyone had been paid, and he said, 'No, they hadn't paid any bills at all.' I later learned that others had been paid, the undertaker, Harry Waite, and others. They had been paid when I asked Mr. Gailey. . . He said when he got the estate straightened out he was going to straighten up with us children. . . I went to see him once or twice before the estate was wound up and then afterwards. By winding up the estate, I mean before all the property was sold. . . I went to him before then and he said he couldn't do anything until the estate was wound up. . . That was within two or three months after my father's death. . . It [the bank] failed around the early part of 1925, right after the sale. I made one or two trips to see him after the bank failed. He said then as quick as he could get things straightened up, he would settle up the estate with us."

From the documentary evidence introduced it appears that W. T. Stanton died February 9, 1924, leaving a number of heirs, including the widow; that the appraisement of the estate was filed

in the court of ordinary on December 10, 1924, and listed 5 shares of gin stock at a value of $100, but the 14 bales of cotton were not listed; that Mrs. W. T. Stanton, the widow, applied for letters of administration and was appointed by the ordinary; that on appeal to the superior court, the appointment was set aside; that on October 24, 1925, Chas. K. Gailey was appointed in her stead, and qualified on November 22, 1924; that the estate consisted of real estate and personal property valued at $5415.45, and that he gave bond in the sum of $5000 with Maryland Casualty Company as surety; that on December 18, 1925, he filed his sworn annual return, showing certain disbursements, doctor's bills, taxes, advertising fees, costs, $750 year's support to the widow, and the sum of $124.25 to the widow as living expenses before the year's support was set apart, and showing a balance on hand of $2660.98; that this return was approved and ordered filed by the ordinary; that on January 16, 1928, E. F. Cook, ordinary of Rockdale County, brought a suit in the superior court of that county against the administrator and the surety on his bond for the use of the heirs at law and Metropolitan Life Insurance Company, a creditor of W. T. Stanton, deceased, to recover $2660.98, alleged to have been in the hands of the administrator on December 18, 1925. (The $2660.98 is the principal item sued for in the present suit.) At the January term, 1929, of Rockdale superior court a verdict and judgment were rendered against the administrator and the surety on his bond for $2660.98 principal, and $104.89 interest to date. This judgment was affirmed by the Court of Appeals. See *Gailey* v. *Cook*, 41 *Ga. App.* 610 (154 S. E. 206). It was recited in the judgment, among other things, that "This judgment represents a recovery by plaintiff for the use of creditors, heirs, and next of kin of all property for which the said administrator is accountable in connection with the administration of said estate." On October 14, 1930, Maryland Casualty Company issued its check for $2825.30, "In full settlement and satisfaction of purchase-price of fi. fa. in the case of Thos. H. Marston, ordinary, for use, etc., v. C. K. Gailey, etc., in Rockdale superior court." The check was endorsed: "Thomas H. Marston, ordinary; Rockdale Co. Ga., for use, v. C. K. Gailey, admr. of est. of W. T. Stanton et al.," and the check was marked paid. On November 4, 1930, the administrator filed his petition to be discharged as ad-

ministrator, and citation thereon was duly issued and published. On December 1, 1930, he filed his final return as administrator of the said estate showing that he had paid out as per listed vouchers the sum of $349.18, that he had in hand a balance of $322.17, and a balance in the closed First National Bank of Conyers of $1894.61. The ordinary passed an order, on December 1, 1930, discharging him as administrator of said estate and ordered that the balance of the funds in the hands of the administrator be paid to Maryland Casualty Company in settlement of the judgment paid by it as surety on the administrator's bond.

Under the facts and circumstances as disclosed by the record, the widow was entitled to the $124.25 to cover her living expenses between the death of her husband and the setting apart of the year's support, a period of some twenty-two months. See *Simmons* v. *Byrd,* 49 *Ga.* 285, 289 (2); *Reynolds* v. *Norvell,* 129 *Ga.* 512 (59 S. E. 299). There is no allegation or proof that payment of the cotton rent to the administrator was made pursuant to an order to sell. The rent which one of the plaintiffs testified was turned over to the administrator had accrued after the death of the deceased. It was held in *Hoyt* v. *Ware,* 156 *Ga.* 98 (6) (118 S. E. 734), "When one owning real estate dies, the title to the real estate passes to the heirs; and it is not the duty of the administrator as such, to collect rents accruing after the death of the intestate; and if he does so, it is not in his capacity as administrator, and he is not liable to the heirs for the amount of the rents as administrator, nor is the surety on his bond as administrator liable." See *Lee* v. *Moore,* 37 *Ga. App.* 279 (139 S. E. 922); *Roberts* v. *Kite,* 33 *Ga. App.* 91 (125 S. E. 719); *Jones* v. *Wilson,* 195 *Ga.* 310 (24 S. E. 2d, 34).

But irrespective of the contentions of the plaintiffs in error with respect to the alleged value of the gin stock, the cotton rent, and the $124.25 item for support of the widow until her year's support was set apart, and what has been said above in respect thereto, the court properly directed a verdict for the defendants for two reasons, that is, on both defenses set up by the defendants. We will deal first with the defense of res judicata. The plaintiffs in the present suit on the administrator's bond are the heirs at law of W. T. Stanton, deceased, and they were usees in the suit by E. F. Cook, ordinary, and obligee in the bond, against the admin-

istrator and his surety on the bond in the first suit, as disclosed by the record in the present case. The Code, § 3-607, provides: "A former recovery, or the pendency of a former suit for the same cause of action, between the same parties, in the same or any other court that has jurisdiction, shall be a good cause of abatement; but if the first action is so defective that no recovery can possibly be had, the pendency of a former suit shall not abate the action." Section 110-501 is as follows: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." In *Perry* v. *McLendon,* 62 *Ga.* 598, Judge Bleckley, writing the opinion for the court, said: "The effect of a judgment can not be avoided by a difference in the pleadings, when those in the first case could and should have been as full as those in the second, though in fact they were not. No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment. It is the body of a case, and not certain of its limbs only, that the final judgment takes hold upon." See *Hill* v. *Cox,* 151 *Ga.* 599 (107 S. E. 850); *Hadden* v. *Fuqua,* 192 *Ga.* 668 (16 S. E. 2d, 737); *Fain* v. *Hughes,* 108 *Ga.* 537 (33 S. E. 1012); *Jones* v. *Schacter,* 29 *Ga. App.* 132 (114 S. E. 59); *Ross* v. *Battle,* 117 *Ga.* 877 (45 S. E. 252); Code, 20-1401. It was stated in the judgment in the first suit, the one by Cook, as ordinary and obligee in the administrator's bond, for the use of the heirs at law et al., that "This judgment represents a recovery by plaintiff for the use of creditors, heirs, and next of kin of all property for which the said administrator is accountable in connection with the administration of said estate." Under the record as here presented and the law applicable thereto, the present action on the administrator's bond by the plaintiffs as heirs at law of the said deceased is concluded by the former suit and the judgment therein, which was an action on the same bond and against the same defendants by the ordinary for use of the same heirs at law and a creditor of the estate, and where the same matters were in issue or under the rules of law could have been put in issue in that suit. The court did not err in di-

recting a verdict for the defendants on the defense of res judicata.

Under the facts and the law applicable thereto, the plaintiffs are also precluded from a recovery in this case by the judgment of the court of ordinary discharging the administrator which was set up as a defense by the defendants in this case. In *Coleman* v. *Coleman,* 113 *Ga.* 149 (38 S. E. 400), the court said: "Until this judgment of the court of ordinary is set aside in some manner authorized by law, it is a bar to the plaintiff's right to call in question any of the acts of the administrator which were or could have been passed upon by the ordinary as a condition precedent to entering a judgment discharging him from his trust as administrator." For rulings to the same effect, see *First National Bank & Trust Co.* v. *Hirschfeld,* 178 *Ga.* 581 (173 S. E. 663) ; *Dorsey* v. *Dorsey,* 27 *Ga. App.* 458 (108 S. E. 807) ; *Clair* v. *Burke,* 62 *Ga. App.* 607 (9 S. E. 2d, 119). A judgment discharging an administrator relieves him from further liability to those interested in the estate, unless such judgment is set aside either on motion in the court of ordinary, or by equitable proceeding in the superior court. The plaintiffs in error in the case at bar did not file an equitable petition in the superior court to set aside the judgment discharging the administrator or make a direct attack on it in the court of ordinary, but relied upon general and insufficient allegations as to fraud and misrepresentations on the part of the administrator to render the judgment of discharge void. The rule in this respect in an equitable proceeding is: "In order to authorize a court of equity to entertain a petition to set aside a judgment for fraud, the acts claimed to constitute the fraud must be clearly and specifically alleged; and mere general averments that the judgment was obtained by misrepresentation, concealment, and fraud are not sufficient." *Coleman* v. *Coleman,* supra. The present suit was not an equitable proceeding but was an action at law. The Code, § 113-2303, is as follows: "A discharge obtained by the administrator by means of any fraud practiced on the heirs or the ordinary is void, and may be set aside on motion and proof of the fraud." But the Supreme Court in *Summerlin* v. *Floyd,* 124 *Ga.* 980 (53 S. E. 452), in dealing with this code section (then § 3511) said the construction to be placed upon this statute "is, that while the judgment of the court of ordinary discharging the administrator is open to attack on the ground that it was fraudulently

procured, it is to be deemed 'void' only when, in a proceeding to set it aside, the proof shows it was secured by practicing a fraud upon the heirs at law or upon the ordinary. Read in connection with the context the term 'void' is to be understood as the equivalent of 'voidable.' . . The provisions of this section of the Code do not alter the cardinal rule that a judgment rendered by a court of competent jurisdiction and regular upon its face is to be deemed conclusive until it is duly set aside, either on motion in the court in which it was rendered, or in an equitable proceeding instituted in the superior court." The cases cited and relied on by counsel for the plaintiffs in error with respect to setting aside a judgment of discharge for fraud are either cases in equity or proceedings in the court of ordinary attacking the discharge on the ground of fraud, and are without application under the facts of the present case. The court did not err in directing a verdict for the defendants.

*Judgment affirmed. Felton and Parker, JJ., concur.*